# Commonwealth *v.* The John T. Dyer Quarry Company, Appellant.

*Taxation—Corporations—Capital stock tax—Capital exclusively engaged in manufacturing—Crushing stone—Acts of June 1, 1889, P. L. 420; June 8, 1893, P. L. 383, and June 7, 1911, P. L. 673.*

A corporation organized for the purpose of quarrying, crushing, preparing and marketing stone, and which does nothing to the stone except break it into pieces and sort it by means of large screens, is not engaged in manufacturing within the meaning of the Act of June 1, 1889, P. L. 420, as amended by the Acts of June 8, 1893, P. L. 353, and June 7, 1911, P. L. 673, which allow exemption to so much of the capital stock as is actually and exclusively employed in carrying on manufacturing within the State.

Argued May 24, 1915. Appeal, No. 11, May T., 1915, by John T. Dyer Quarry Company, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1914, No. 30, on submission to court without a jury, in case of Commonwealth of Pennsylvania v. The John T. Dyer Quarry Company. Before BROWN, C. J., MESTREZAT, POTTER, ELKIN, STEWART, MOSCHZISKER, and FRAZER, JJ. Affirmed.

Appeal from settlement of capital stock tax by the Auditor General and State Treasurer. .

McCARRELL, J., filed the following opinion:

The defendant asks exemption for its capital employed in crushing stone, claiming that it is a manufacturing company and that its capital is employed exclusively in manufacturing. Trial by jury has been duly waived in pursuance of the Act of April 22, 1874,

109. From the testimony submitted we find the following:

### STATEMENT OF FACTS.

Defendant company was formed and incorporated December 27, 1900, for the purpose of "quarrying, crushing, preparing or marketing stone." The valuation of its capital stock as made by its officers is $464,600. Of this there was invested in shares of other Pennsylvania corporations paying tax on capital stock the sum of $16,600, leaving as the valuation of its stock for the year 1912, $448,000. Upon this amount a tax of $2,240 was settled September 9, 1913. On account of this settlement the defendant paid on November 6, 1913, $250. The defendant claims that it is exempt as a manufacturing company actually using its capital in carrying on the business of manufacturing. Is the defendant entitled to this exemption? This is the sole question to be determined here.

### DISCUSSION.

The exemption from taxation is claimed under the revenue act of June 1, 1889, P. L. 420, amended by Act of June 8, 1893, P. L. 353, and Act of June 7, 1911, P. L. 673. This act in its 21st section imposes a tax of five mills upon each dollar of the actual value of the entire capital stock of every corporation, joint stock association, limited partnership and company doing business in the State. It stipulates, however, "That the provisions of this section shall not apply to the taxation of the capital stock of corporations, limited partnerships and joint stock associations organized for manufacturing purposes which is invested in and actually and exclusively employed in carrying on manufacturing within the State; ........but every manufacturing corporation, limited partnership or joint stock association shall

pay the tax of five mills herein provided upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident and appurtenant to its manufacturing business, it being the object of this proviso to relieve from State taxation only so much of the capital stock as is invested purely in the manufacturing plant and business." The corporation claiming exemption under this proviso must show as conditions precedent to the allowance of the exemption that it is,

(a) Organized for manufacturing purposes, and

(b) That its capital is actually and exclusively employed in carrying on manufacturing within the State.

The defendant company does not in terms appear to have been organized for manufacturing purposes. Its corporate purposes is stated to be "Quarrying, crushing, preparing and marketing stone." Although it is not expressly declared to be a manufacturing company, it may be so in fact if its business is actually that of manufacturing. Whether this is so or not will depend upon what it does in the carrying on of its business. Quarrying is not manufacturing, neither is crushing in and of itself a manufacturing process, unless it results in the production of a new and different article. Marketing stone is certainly not manufacturing. Whether preparing stone is to be so regarded as manufacturing depends upon the method and result of the preparation. The testimony of its treasurer submitted at the trial thus defines the method and result of the preparation made by the company:

"The company takes the raw material consisting of rock and stone from the quarries and carries it by hand or machinery to large crushers, which crush the stone into smaller sizes. This crushed stone is carried by belts or conductors to large screens where it is assorted, the different sizes going into different bins, and that which is not in condition to pass through the screens goes into another bin whence it is taken back to the

crusher and again recrushed to a marketable size. The company has six plants located at Marysville, Howellsville, Bordsboro, and Clingan, Pennsylvania, and has a capacity of 4,500 tons of manufactured product per day. In its manufacturing operations it employs 18 crushers with the necessary boilers, engines, elevators, screens, storage bins, etc., necessary for the" preparation of the stone for marketing.

This testimony is the statement of the defendant company as to the processes employed by it in preparing stone for the market. While it has extensive machinery, it is used only for the breaking of the stone or rock into the sizes required for the different purposes for which the stone is afterwards used. If the breaking of the stone into these sizes was performed as it could be by the manual labor of men wielding hammers and breaking the stone into the required sizes, it could scarcely be pretended that this is manufacturing. The machinery employed doubtless crushes the stone much more rapidly and economically than it could be done by men wielding hammers, and the sorting of the sizes is accomplished by running the crushed stone over screens with different sized mesh and permitting the stone of the varying sizes to fall into the underlying bins. There does not seem to be any attempt to make the sizes of the stone into which the rock is crushed of any uniform shape. The pieces as they fall from the crusher are sold in the market without the application thereto of any art, skill, or process which in any way changes the appearance or the form of the portions as they leave the crusher. The processes of this defendant seem to be entirely different from those of a slate company, which splits the slate rock into pieces and produces therefrom shingles, slates, polished slabs for wainscoting and other purposes, and slate fashioned for various uses to which slate is adapted. The irregular pieces as they fall from the crusher are sold in that condition without any attempt on the part of the defendant

company to remove the rough, irregular edges or in any way fashion these portions so as to give them a uniform appearance. The employment of the process and the use of the machinery is solely for the purpose of breaking the stone into pieces of various sizes. The rock still remains rock or stone. The only difference is in the sizes of the portions, and in this natural condition without the application of any art or process to change the form or appearance of the broken pieces the same are sold by the defendant company in the market. The term "manufacturing" has been defined in many different ways by lexicographers and has been considered judicially in many cases.

In the case of Hartranft v. Wiegmann, 121 U. S. 609, the Supreme Court of the United States uses the following language (p. 613):

"The question is whether cleaning off the outer layer of the shell by acid and then grinding off the second layer by an emery wheel so as to expose the inner layer is a manufacture of the shell, the object of these manipulations being simply for the purpose of ornament and some of the shells being afterwards etched by acids so as to produce inscriptions upon them. It appears......
that there is no difference in name and use between the shells ground on the emery wheel and those not ground.
......We are of opinion that the shells in question here were not manufactured and were not manufacture of shells within the sense of the statute imposing a duty of 35 per centum upon such manufactures but were shells not manufactured and fell under that designation on the free list. They were still shells. They have not been manufactured into a new and different article having a distinctive name, character or use from that of a shell. The application of labor to an article either by hand or mechanism does not make the article necessarily a manufactured article within the meaning of the term as used in the tariff laws. Washing and scouring wool does not make the resulting wool a manufac-

ture of wool. Cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton."

Counsel for defendant refers us to many cases decided by this court in which it was decided that manufacturing had been performed: The dyeing of woolen and cotton goods, Com. v. Quaker City Dye Works Co., 5 Pa. C. C. 94; the making of hams, sides, bacons, etc., from hogs, Com. v. Penna. Packing and Provision Co., 3 Commonwealth Docket 1896; the production of sole leather by tanning hides, Com. v. Elk Tanning Co., 598 Commonwealth Docket 1896; converting coal into coke, Com. v. Hecla Coke Co., 490 June Term, 1892; converting whole spices and mustard seed into salable mustard, spices and condiments, Com. v. A. Colburn Co., 306 January Term, 1892; changing clay into brick by tempering, moulding and burning, Com. v. Excelsior Brick and Stone Co., 535 January Term, 1893; quarrying large blocks of slate, splitting them into pieces of varying thickness, sizing, dressing and preparing for roofing, door steps, lintels, school slates and kitchen utensils, Com. v. East Bangor Consolidated Slate Co., 158 January Term, 1887, are all cases in which by some art or process a different product has been produced than that upon which the art or process was expended. Many other cases have been considered and might be here cited. Among these is the late case of Commonwealth v. Consolidated Dressed Beef Company, 242 Pa. 163. This case very nearly resembles the one we now have under consideration. After the application of defendant's machinery the product still remains stone, broken into sizes to meet the demands of the market. It is still stone, bearing the appearance of stone, with no regular shape or fixed size in the portions which are sold just as they come from the crushers without any attempt to remove the irregularities of the edges or make the pieces of uniform shape. In our opinion this is not manufacturing within the meaning of our statute.

We therefore have reached the following conclusions:

1. The defendant company is not incorporated for manufacturing purposes.

2. The defendant company is not employing its capital actually and exclusively in the carrying on of manufacturing within the State and is not entitled to the exemption allowed by the Acts of June 8, 1893, P. L. 353, and June 7, 1911, P. L. 673.

3. The Commonwealth is therefore entitled to recover the amount of its settlement, less the sum paid on account, as follows, to wit:

| | |
|---|---:|
| Amount of settlement, September 9, 1913,... | $2,240.00 |
| Less amount paid on account November 6, 1913, | 250.00 |
| Balance, | $1,990.00 |
| Interest November 6, 1913, to February 17, 1915, | 152.90 |
| | $2,142.90 |
| Attorney general's commission, | 107.15 |
| Total now due Commonwealth, | $2,250.05 |

The case was tried without a jury under the provisions of the Act of April 22, 1874, P. L. 109.

The court directed judgment to be entered in favor of the Commonwealth for $2,250.05. The John T. Dyer Quarry Company appealed.

*Errors assigned* were in dismissing exceptions to various findings of the trial judge and the judgment of the court.

*J. T. Olmsted,* with him *W. S. Snyder* and *C. B. Miller,* for appellant.

*Wm. M. Hargest,* Deputy Attorney General, with him *Francis Shunk Brown,* Attorney General, for appellee.

PER CURIAM, July 3, 1915:

This judgment is affirmed on the opinion of the learned court below directing it to be entered.