IOWA LIMESTONE COMPANY, Appellant, v. J. G. COOK, County Auditor, et al., Appellees.

No. 40466.

December 13, 1930.

*Brammer, Brody, Charlton & Parker,* for appellant.

*Carl S. Missildine, George Comfort, C. A. Weaver,* and *C. R. S. Anderson,* for appellees.

Faville, J.—There is no dispute in the facts involved in this case. The appellant was organized as a corporation under the laws of this state, its articles reciting that its principal place of business is at Alden, in Hardin County, Iowa. All of the officers and members of the board of directors of the corporation are residents of Des Moines, in Polk County. The corporation owns and operates a limestone quarry at Alden. The business at Alden is managed by a superintendent, who resides there. It is stipulated that:

"The processes performed in the plant consist of blasting of limestone from a natural deposit and the crushing and screening of the limestone to merchantable sizes. The limestone is loaded into cars, trucks, and wagons from the plant and shipped direct to purchasers."

It also appears from the stipulation that there are no facilities within Polk County for handling the products of the quarry. However, an office is maintained in Des Moines, where the principal set of books of the corporation is kept. A small quantity of stationery is kept in this office, and space is rented from another corporation. The president, vice president, and treasurer of the appellant are also officers of the company, which is engaged in the coal business. The books of the appellant are kept by the coal company under a contract. The appellant corporation employs one salesman, for part time only. This salesman resides in Des Moines, but his territory is in the northern and central parts

of the state. It does not appear that any sales are made from the office in Des Moines. When sales of limestone are reported to the officers of the corporation in Des Moines, an order is sent to the superintendent at Alden, who fills the same. This superintendent also sells limestone products at Alden, and takes orders from various localities in the state as they are sent to him. All remittances, whether received at Alden or not, are forwarded to the treasurer of the corporation at Des Moines. A substantial deposit is maintained in a bank at Alden, and the operating expenses are paid through said bank. The office at Alden keeps complete pay-roll records, and complete records of all loadings and deliveries and of all orders received. Stockholders' meetings are held in the office of the company at Alden. The books containing the records of the stockholders' and directors' meetings are kept at Des Moines. A bank account is kept by the corporation in Des Moines, and notes receivable and other evidences of indebtedness due the corporation are also kept in Des Moines. Approximately 92 per cent of the sales of the corporation are made within the state of Iowa, and within some 30 counties of the state. About 8 per cent of the output is disposed of in Polk County. The corporation has been assessed for the year of 1929 on its personal property and moneys and credits by the assessment district of the town of Alden. It also appears that the assessor for the city of Des Moines made an assessment against the appellant on account of moneys and credits in the aggregate of $51,209,.together with a penalty of 100 per cent for said year. This assessment was reduced by the city council of the city of Des Moines to $1,000. This action is brought to cancel this assessment.

I. Briefly stated, it is the contention of the appellant that it is not a ''manufacturer,'' within the meaning of the statutes of this state, and hence is subject to taxation only as provided by Section 7008 of the Code, 1927. Said section is as follows:

''The shares of stock of any corporation organized under the laws of this state, except corporations otherwise provided for in Chapters 330 to 341, inclusive, and except as provided in Section 7102, shall be assessed to the owners thereof as moneys and credits at the place where its principal business is transacted. The assessment shall be on the value of such shares on the first

day of January in each year. In arriving at the assessable value of the shares of stock of such corporations, the amount of their capital actually invested in property other than moneys and credits shall be deducted from the actual value of such shares. Such property other than moneys and credits shall be assessed as other like property."

Code Section 6975 is as follows:

"Any person, firm, or corporation who purchases, receives, or holds personal property of any description for the purpose of adding to the value thereof by any process of manufacturing, refining, purifying, combining of different materials, or by the packing of meats, with a view to selling the same for gain or profit, shall be deemed a manufacturer for the purposes of this title, and shall list such property for taxation."

Code Section 6978 provides:

"Corporations organized under the laws of this state for pecuniary profit and engaged in manufacturing as defined in the third preceding section shall list their real estate, personal property not hereinbefore mentioned, and moneys and credits in the same manner as is required of individuals."

Is the appellant to be deemed "a manufacturer," under said statute? The provisions of the articles of incorporation of appellant are not shown in the record. There is no dispute as to the method of operation of the appellant's plant. Under the stipulation, the "process performed in the plant consists of blasting limestone from a natural deposit and the crushing and screening of the limestone to merchantable sizes and loading it into cars, trucks, and wagons from the plant." Does this make the appellant a manufacturer, within the meaning of the statute?

In *Hartranft v. Wiegmann*, 121 U. S. 609 (30 L. Ed. 1012), the Supreme Court of the United States considered a question involving the custom duty on shells. The court said:

"We are of opinion that the shells in question here were not manufactured, and were not manufactures of shells, within the sense of the statute imposing a duty of 35 per centum upon such manufactures, but were shells not manufactured, and fell under that designation in the free list. They were still shells.

They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws. Washing and scouring wool does not make the resulting wool a manufacture of wool. Cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton. * * * In *Frazee v. Moffitt,* 20 Blatchford 267, it was held that hay pressed in bales, ready for market, was not a manufactured article, though labor had been bestowed in cutting and drying the grass and bailing the hay.''

*Commonwealth v. John T. Dyer Quarry Co.,* 250 Pa. St. 589 (95 Atl. 797), involved the taxation of a corporation. The Supreme Court of Pennsylvania adopted the opinion of the trial court, from which we quote:

''The defendant company does not in terms appear to have been organized for manufacturing purposes. Its corporate purposes are stated to be 'quarrying, crushing, preparing and marketing stone.' Although it is not expressly declared to be a manufacturing company, it may be so in fact if its business is actually that of manufacturing. Whether this is so or not will depend upon what it does in the carrying on of its business. Quarrying is not manufacturing; neither is crushing, in and of itself, a manufacturing process, unless it results in the production of a new and different article. Marketing stone is certainly not manufacturing. Whether preparing stone is to be so regarded as manufacturing depends upon the method and result of the preparation. The testimony of its treasurer submitted at the trial thus defines the method and result of the preparation made by the company: 'The company takes the raw material, consisting of rock and stone, from the quarries, and carries it by hand or machinery to large crushers, which crush the stone into smaller sizes. This crushed stone is carried by belts or conductors to large screens, where it is assorted, the different sizes going into different bins, and that which is not in condition to pass through the screens goes into another bin, whence it is taken back to the crusher and again recrushed to a marketable size. * * *' While it has extensive machinery, it is used only

for the breaking of the stone or rock into the sizes required for the different purposes for which the stone is afterwards used. If the breaking of the stone into these sizes was performed, as it could be, by the manual labor of men wielding hammers and breaking the stone into the required sizes, it could scarcely be pretended that this is manufacturing. The machinery employed doubtless crushes the stone much more rapidly and economically than it could be done by men wielding hammers, and the sorting of the sizes is accomplished by running the crushed stone over screens with different sized mesh, and permitting the stone of the varying sizes to fall into the underlying bins. There does not seem to be any attempt to make the sizes of the stone into which the rock is crushed of any uniform shape. The pieces as they fall from the crusher are sold in the market without the application thereto of any art, skill, or process which in any way changes the appearance or the form of the portions as they leave the crusher. The processes of this defendant seem to be entirely different from those of a slate company, which splits the slate rock into pieces and produces therefrom shingles, slates, polished slabs for wainscoting and other purposes, and slate fashioned for various uses to which slate is adapted. The irregular pieces, as they fall from the crusher, are sold in that condition, without any attempt on the part of the defendant company to remove the rough, irregular edges or in any way fashion these portions so as to give them a uniform appearance. The employment of the process and the use of the machinery is solely for the purpose of breaking the stone into pieces of various sizes. The rock still remains rock or stone. The only difference is in the sizes of the portions, and in this natural condition, without the application of any art or process to change the form or appearance of the broken pieces, the same are sold by the defendant company in the market. * * * After the application of defendant's machinery the product still remains stone, broken into sizes to meet the demands of the market. It is still stone, bearing the appearance of stone, with no regular shape or fixed size in the portions, which are sold just as they come from the crushers, without any attempt to remove the irregularities of the edges or make the pieces of uniform shape. In our opinion, this is not manufacturing, within the meaning of our statute.''

The case of *People ex rel. Tomkins Cove Stone Co. v. Saxe,* 176 App. Div. 1 (162 N. Y. Supp: 408), involved the taxation of a company under a statute which exempted "manufacturing companies" from the payment of a franchise tax. The business of the company, as shown in the opinion, consisted in blasting irregular blocks of stone from the limestone cliff owned by it, and transporting them to the top of its breaker or crusher, where the stone passed through rollers, reducing it to various sizes. The stones so broken were carried on conveyors, and deposited in revolving washing cylinders, by which the dirt was removed, and the stones were then carried to the top of the screen house, where they passed over other screens, separating them into various sizes. Each assorted size was then carried to a separate storage bin, from which it was loaded upon cars or boats and marketed. The court said:

"\* \* \* it is difficult to resist the belief that the sole business of the relator is, as stated in its first report filed with the comptroller, that simply of 'crushing stone.' The result of its operations is the same as was produced in the earlier days by breaking large stones with a hammer, and throwing a few pails of water on the crushed product to wash off the dust and dirt. \* \* \* In the case at bar, no new article was produced by the relator. It simply took the raw material, which had been created by the processes of nature, and broke it into convenient sizes for use and sale. The reduced sizes were the raw material, no less than when blasted in rock form from the cliff. The relator expended no labor in fashioning the pieces. When sold, they were in precisely the chance conditions in which they left the breaker. Had the existence of the stone been due to the agency of the relator, or an article have been created by its labor or the addition of other substances, producing an article having a different character and use, a very different question would be presented."

To the same effect, see *Commonwealth v. Welsh Mountain Min. & Kaolin Mfg. Co.,* 265 Pa. St. 380 (108 Atl. 722) ; *Wellington v. Inhabitants of Belmont,* 164 Mass. 142 (41 N. E. 62).

There is a very exhaustive and comprehensive brief, covering the entire subject of "who is a manufacturer within meaning of tax exemption provisions," in 10 A. L. R. 1273.

It is contended that we have interpreted the statute to a

contrary effect in *Bennett v. Finkbine Lbr. Co.*, 199 Iowa 1085. That case is clearly distinguishable from the instant case. Primarily, it is to be noticed that in the *Bennett* case the articles of incorporation provide that the business of said corporation is "the production, manufacture and sale of lumber and kindred commodities and to that end it may purchase, mortgage, sell and otherwise acquire, incumber or dispose of such real and personal property and it may build, purchase, lease, mortgage, control, operate or otherwise acquire, incumber, sell or dispose of such mills, factories, warehouses, stores, canals, roads, tramways, railroads and equipment as it may deem needful and convenient in the transaction of its business." In the opinion in said case we called especial attention to the fact that the business of the corporation, as declared in its articles, was *"the production, manufacture and sale of lumber and kindred commodities."* We held that, under the recitals of the articles of incorporation of said company, and the evidence with regard to the manner in which it conducted its business, it was a manufacturing corporation.

That such a corporation is a manufacturing corporation, see, also, *Pierce v. Yeaton,* 78 N. H. 378 (100 Atl. 604) ; *State ex rel. Browne v. A. Wilbert's Sons Lbr. & S. Co.,* 51 La. Ann. 1223 (26 So. 106) ; *People ex rel. Standard Wood Co. v. Roberts,* 20 App. Div. 514 (47 N. Y. Supp. 122).

The facts stipulated in the instant case disclose an entirely different situation. The appellant, under the record, does nothing that in any way changes the character of the natural product with which it deals. It simply takes stone from the natural quarry, and breaks it into smaller pieces. The material is large stone when taken from the quarry, and it is small stone when broken; but nothing whatever is added to or taken from this product by the process of crushing. The process does not change the product into a new or different article, having any new or distinctive name or character. This is altogether different from the business of felling timber in its natural state, and sawing, planing, dressing, and sizing the same into an entirely new product, namely, merchantable lumber of many varieties.

We hold that the appellant was not a manufacturer, under the statute.

II. It is contended, however, that, under Section 7008 of the Code, the appellant is subject to taxation "at the place where

542

its principal business is transacted,'' and that, under the record in this case, the principal business of the appellant is in fact transacted at Des Moines, and therefore that the appellant is subject to taxation in the taxing district of said city.

In *Koochiching Co. v. Mitchell,* 186 Iowa 1216, we considered the question of the assessment of corporate stock, and in said opinion we said:

"The right to incorporate, and acquire the powers and privileges of a private corporation, is purely statutory, and it is certainly competent. for the legislature to prescribe the conditions upon which such right may be exercised. The statute quoted prescribes, in unequivocal terms, that the stock of any corporation organized under the laws of this state, except those not organized for pecuniary profit and those otherwise provided for in that act, 'shall be assessed to the owners thereof, at the place where its principal business is transacted.' The statute regulating the incorporation of private companies makes it mandatory that each shall, in its articles, designate its principal place of business; and having done so, it does not lie in the mouth of the company to say that a statutory duty required to be performed at that place is avoided because it has chosen to invest its money and exercise its principal corporate powers in another jurisdiction. There is nothing oppressive or wrong in this proposition. Investors incorporate themselves because they thereby obtain rights and privileges of value, and those rights and privileges contribute largely to the value of their shares; and if the state, in conferring these benefits, makes it a condition that those who accept and enjoy them shall, in turn, contribute to the public revenues, who is wronged? Those who incorporate do not act under compulsion, but voluntarily; and if the conditions be not to their liking, they can refrain therefrom, or find a corporate home in jurisdictions where the regulations are thought to be more favorable. The requirement of the statute, that every corporation shall, in its articles, designate its principal place of business, has reference, without any question, to a principal place of business in this state; and having been fixed, as by law required, that place becomes the place for taxation of its shares of stock.''

In other states it is held that, where the statute requires a corporation to state its principal place of business in its articles of incorporation, such recital is conclusive as to the principal place of business of such corporation. *Western Transp. Co. v. Scheu,* 19 N. Y. 408; *Pelton v. Transportation Co.,* 37 Ohio St. 450; *Union Steamboat Co. v. City of Buffalo,* 82 N. Y. 351; *Oswego Starch Factory v. Dolloway,* 21 N. Y. 449.

Under the record in this case, the principal place where the business of appellant was transacted was at Alden, in Hardin County.

III. It is contended, however, that the appellant is subject to taxation in the taxing district of Des Moines, under and by virtue of Section 6966 of the Code, which is as follows:

"When a person, firm, or corporation is doing business in more than one assessment district, the property and credits existing in any one of such districts, or arising from business done in such district, shall be listed and taxed in that district, and the credits not existing in or pertaining especially to the business in any district shall be listed and taxed in that district where the principal place of business may be."

Without making any pronouncement as to the effect of said section or the proper method of its application, we hold that, under the record, said section has no application to this case,  for the reason that it does not appear that the appellant is doing business within the taxing district of the city of Des Moines, as contemplated by said section of the statute. We have set out the substance of the record with regard to the method of the operation of the appellant corporation, and we conclude therefrom that the principal place of business of said corporation was at Alden, in Hardin County, and that it was "doing its business" at said place, and that the keeping of books and other transactions of said corporation in the taxing district of the city of Des Moines, as shown by the record, did not constitute "doing business" in said taxing district, within the meaning and contemplation of said section of the statute.

It follows that the decree of the district court in dismissing the appellant's petition was erroneous, and it is—*Reversed.*

544

MORLING, C. J., and EVANS, STEVENS, and WAGNER, JJ., concur.

ALBERT, J., not participating.

GRIMM, J. (dissenting)—Under the particular language of the statute, I think the company was engaged in manufacturing "crushed rock," which is a distinct article of trade and commerce.

I am authorized to say that Justices DE GRAFF and KINDIG join in this dissent.