Sol Luis Descartes, Treasurer of Puerto Rico, Petitioner, *v.* Tax Court of Puerto Rico, Respondent; Puerto Rico Aggregates Co., Intervener.

No. 281. Argued November 13, 1952.—Decided March 18, 1955.

---

84

*Víctor Gutiérrez Franqui, Attorney General,* and *José A. Mayoral, Assistant Attorney General,* for petitioner. *McConnell & Valdés* for intervener, plaintiff in the main action.

MR. JUSTICE SIFRE delivered the opinion of the Court.

At the instance of the then Treasurer of Puerto Rico, now Secretary of the Treasury, we issued a writ of certiorari to review the judgment of the former Tax Court, sustaining the complaint of the Puerto Rico Aggregates Company, intervener herein, requesting the refund of excise taxes paid on certain machinery and equipment which it imported to be used in its plant.

The respondent court held that the machinery was covered by the exemption under § 16–B of the Internal Revenue Act, as "essential in the establishment and operation of intervener's industrial plant"; that it is a part of "the factory stage of production having to do with raw material from the beginning of the process until completion thereof"; and that in order to be entitled to the exemption it is not necessary that the plant be devoted to manufacture. It also held that even if it were, the machinery would be exempt because, notwithstanding the fact that the product sold to the public "is not chemically or physically new or different from the original material," the intervener is engaged in the manufacturing business, in view of the fact that, as a result of the factory process carried on in its plant, "the raw material is processed into a product fit for immediate commercial or industrial use."

Petitioner contends that under the provisions of § 16–B, *supra*, the tax exemption covers only machinery, apparatus, or equipment of the factory stage of production of *manufacturing* industrial plants where raw material is converted or transformed into a new or distinct product, and that the machinery involved in the litigation is not covered by the exemption since it is used "in the breaking, crushing, cleansing, and sorting of sand and stone," which is not the manufacturing process contemplated by the Act.

■ Let us first dispose of intervener's contention urging that we quash the writ on the ground that petitioner failed to comply with Rule 11 of our Regulations and that the appeal is frivolous.[1] The petition substantially conforms to the provisions of Rule 15, applicable thereto, and there is

---

[1] Rule 15 prescribes in part as follows:

"*a.* Writs of habeas corpus, injunction in aid of appellate jurisdiction, certiorari, *quo warranto*, mandamus, and prohibition will be issued in this court only upon the order of the court, or when authorized by law by a justice thereof.

"*b.* When the original jurisdiction of this court is invoked, the petitioner must file a petition in which he shall set forth briefly the facts

nothing trivial about the question which the petitioner has properly raised before us, notwithstanding his failure to send up to this Court the transcript of the evidence, of which the intervener also complains, since there is no controversy on the facts. *Buscaglia, Treas.* v. *Tax Court*, 67 P.R.R. 30.

■ According to the findings of the respondent court, the Puerto Rico Aggregates Company is engaged in the following operations in connection with which it utilizes the machinery and equipment involved in the litigation: "The rough gravel is extracted from the river banks by means of a dragline and loaded into trucks, and transported to an establishment. This gravel is deposited in a storage bin and then, by its own weight or gravity, passes to an apron which drops it on a belt conveyor. This conveyor carries the gravel or raw material to an automatic screen, also mechanical. Here all the material is screened: the mud, dirt, and other organic matter drop into a storage bin underneath the screen. The stone, not exceeding three inches in size, first passes through a crusher and then to a second conveyor, where the first stage of the process is terminated. From this conveyor the stone is carried to a second screen where it is segregated from the sand and then washed. The sand is also washed to remove the dirt or organic matter and it is then mechanically transported to a storage bin. The stone in the second screen is separated into sizes of 1½ inches or less, and from there passes to another storage bin where it is washed again and finally stored. The stone exceeding 1½ but less than two inches passes to a second crusher where it is reduced to 1½ inches or less, and it falls into a third belt conveyor. The stone drops on a return conveyor which carries it to the second conveyor all over again, which returns it to the second screen to be washed and sorted, and

and the law relied upon as well as a memorandum of authorities of not more than 10 pages in support of his petition.

"*c*. When a petition for a special proceeding is filed in this court, it shall contain a brief statement of the facts and the law relied upon . . ."

so on until it is stored. The stone thus crushed, washed, and reduced to specific sizes, which is plaintiff's finished product, is different from that extracted from a quarry and crushed, in that as a result of the process to which it is subjected it is freed from all adherent sand or other organic matter. Sand, the other finished product, is free from dirt or organic matter, is more refined, and is subjected to a certain degree of purification. According to the testimony of plaintiff's experts, plaintiff operates an industrial plant where a factory process is carried on."

The provisions of § 16–B of the Internal Revenue Act —Act No. 85 of August 20, 1925 (Sess. Laws, p. 584)—as amended by Acts Nos. 195 of May 7, 1949 (Sess. Laws, p. 614) and 166 of May 3, 1950 (Sess. Laws, p. 448), are applicable to the case at bar. That section was first incorporated in the Internal Revenue Act by Act No. 77 of May 9, 1944 (Sess. Laws, p. 166), and it provided that: "There shall be exempt from the payment of the excises imposed by this Act all machinery, apparatus, or equipment that may be essential for the establishment and operation of *industrial plants; Provided,* That the Treasurer of Puerto Rico shall prescribe the regulations that may be necessary in order to enforce the provisions of this section." (Italics ours.) In *Caparra Dairy* v. *Tax Court,* 67 P.R.R. 292, where we construed those provisions, we held that it was not necessary, as a condition for the tax exemption, that the industrial plants be devoted to the manufacture of some particular product, namely, the conversion or transformation of raw material into finished products through the application, either direct or indirect, of labor, and therefore that the machinery, apparatus, or equipment that may be essential for the establishment or operation of industrial plants was covered by the exemption, even if industrial plants devoted to manufacturing were not involved.

Section 16–B, *supra,* was first amended by Act No. 436 of May 14, 1947 (Sess. Laws, p. 908), as a result of which

it read in part as follows: *"There shall be exempt from the payment of the excises imposed by this Act all apparatus, machinery, or equipment that may be essential for the establishment and operation of industrial plants; . . . Provided, finally, That this being an exemption which covers the essential machinery for the establishment and operation of industrial plants, it shall be construed as applicable only to the machinery of the factory stage of production of the industrial process, having to do with raw materials from the beginning of the manufacturing process until completion thereof. . . ."* (Italics ours.) Those provisions remained in that section and are in force at present, notwithstanding the amendatory Acts of 1949 and 1950. It is for us to decide whether, notwithstanding those provisions, the exemption continues to cover the machinery, apparatus, or equipment used in industrial plants, even if they are not manufacturing, as held in *Caparra Dairy* v. *Tax Court*, *supra*, and as held by the respondent court in the case at bar, or if by reason of such provisions it was restricted to the machinery apparatus, or equipment of manufacturing industrial plants. If we reach the latter conclusion, we must then decide whether intervener's machinery belongs to the factory stage of an industry devoted to manufacture within the contemplation of the Act.

Section 16–B, *supra*, as has been noted, first provides that there shall be exempt from the payment of the excises all apparatus, machinery, or equipment that may be essential for the establishment and operation of *industrial plants*, but the generality of the term is then restricted. Although in the first part of the pertinent proviso it was reiterated that the essential machinery of *industrial plants* was exempt, it is thereafter stated in clear terms that it shall be construed as applicable only to the machinery *of the factory stage of production* of the industrial process *having to do with raw materials from the beginning of the manufacturing process until completion thereof.* These provisions

describe, in our opinion, the industrial plants referred to in the Act and are indicative of the legislative intention to exempt, not the machinery of any industrial plant, but of those industrial plants engaged in manufacturing activities. To reach a different conclusion, we would have to disregard the language of the statute, or to assume that the Legislature used it inadvertently or without knowledge of its import. We must presume otherwise. And in order to find in the Act the underlying intention of the lawmaker, we are bound to take into consideration all of its provisions, if possible, and it is possible in this case. By so doing we reach the inescapable conclusion that, according to the italicized wording of § 16–B, the machinery of the factory stage of production—production by manufacture—having to do with raw materials throughout the entire manufacturing process, namely, the machinery of industrial plants devoted to manufacture, is considered essential and is exempt from taxation.

Although the question just decided was not directly involved in *Cervecería India, Inc.* v. *Tax Court*, 71 P.R.R. 463, or in *Francis* v. *Tax Court*, 74 P.R.R. 18, for which reason we did not decide it there, the decisions rendered in those cases contain, however, statements which are the forerunner of our interpretation of the provisions of § 16–B, *supra*, in the instant case. In the first of those cases we stated that: "It is obvious, then, that the legislative purpose was to restrict the exemption, granted under § 16–B prior to the amendment of May 14, 1947, only to the machinery of the factory stage of production of the industrial process itself, which would necessarily have to do *with the conversion* of raw materials from the beginning of the manufacturing process until its completion. Any other machinery which does not have to do with *the conversion* of raw materials ... does not come under the exemption ..." (Italics ours.) In the second, we referred to the decision

in *Burke* v. *Stitzel Weller Distillery*, 145 S. W. 2d 861, and stated that, in that case "it is held that under a statute *exempting machinery of corporations engaged in manufacturing from taxation*, the meaning of the word 'manufacture' varies according to the circumstances and it is not susceptible of a definition that is all-embracing or all exclusive . . ." (Italics ours.) No reference would have been made to that decision if our position had been that the exemption is not restricted to machinery of manufacturing plants.

We have given due consideration to the trial court's argument that "the industrial tax exemption provided in §16–B of the Internal Revenue Act responds to the public policy of the People of Puerto Rico to provide new sources of work in addition to agriculture and to the extant sugar industry, and to attempt to solve the ever-increasing unemployment problem by intensive industrialization of the Island." Therefore, in the opinion of that court it would be inexplicable to grant the exemption only to industrial plants engaged in manufacture and not to all industrial plants which, although not manufacturing, also provide employment. In *Caparra Dairy* v. *Tax Court*, *supra*, we invoked that public policy and we did so in order that it might help us in interpreting the phrase "industrial plants" employed when enacting § 16–B in 1944, there being nothing to indicate whether its provisions referred to industrial plants, even if they are not manufacturing, or only to plants devoted to manufacture. In view of that uncertainty, we were justified in invoking the public policy. In the instant case, however, the situation is entirely different, since that section, as amended in 1947 and as it now stands, clearly identifies the plants whose machinery is contemplated by the exemption, and it makes evident the purpose of restricting the same to those engaged in manufacture. To resort to public policy to reach an opposite conclusion would be to disregard the underlying purpose of the language of the statute and to extend, by

judicial construction, the exemption granted in the terms which the Legislature ultimately considered sufficient and adequate to carry out the public policy of providing additional sources of employment.

■ The term "to manufacture" is not susceptible of a definition that is all-embracing, as stated in *Francis* v. *Tax Court, supra.* The judicial precedents are at variance as to its meaning, but it is quite obvious that the prevailing doctrine is that to manufacture implies to convert, change, or transform original or raw material into a new and different article. *Fruit Growers, Inc.* v. *Brogdex Co.,* 283 U. S. 1; *Hartranft* v. *Wiegman,* 121 U. S. 609; *Anheuser-Busch Brew. Asso.* v. *United States,* 207 U. S. 556; *Commonwealth* v. *Weiland Packing Co.,* 141 Atl. 148 (Pa.); *Commonwealth* v. *McGrady-Rodger Co.,* 174 Atl. 395 (Pa.); *Commonwealth* v. *Peerless Paper Specialty,* 25 A. 2d 323 (Pa.). The difficulty lies in determining what is a new or different article. This problem has worked great hardships on the courts, and it generally has to be elucidated by taking into consideration the circumstances in each particular case and the applicable law.

■■ Is the product which the Puerto Rico Aggregates Company sells to the public a new or different article as a result of the industrial process described in this opinion? Referring to intervener's operations and to the product sold in the market, the respondent court states in its findings that "It was the result, first, of removing the mud and other useless organic elements from the raw material; and second, as to the utilizable elements, of their separation into stone and sand; the adaptation and reduction of the stone to desirable sizes for immediate commercial use, and the refining of sand to a certain degree of purification." In other words, what is expended to the public is the same raw material created by the action of nature—stone and sand, simply washed, the former reduced in size, and the latter purified by the removal of all dirt or organic matter. Nothing is

added to the stone and sand. At the end of the industrial process, the former is unchanged. It is not molded into any form or given any special appearance or characteristic by the application of art or skill, and neither the stone nor the sand is transformed into a new or different product. In view of the attendant circumstances in the case at bar, we must reach the conclusion that the machinery in question does not belong to the factory stage of production having to do with raw materials in a manufacturing process, within the meaning of the provisions of § 16–B of the Internal Revenue Act. This view is shared by a majority of the courts called upon to consider and decide whether operations very similar to those carried on by intervener in its plant are activities of a manufacturing nature, when deciding the question in the negative, particularly in cases involving tax exemption. *People* v. *Saxe*, 162 N.Y.S. 408, affirmed in 221 N. Y. 601, 117 N. E. 1081; *Commonwealth* v. *Welsh Mountain Min. & Kaolin Mfg. Co.*, 108 Atl. 722 (Pa.); *Inhabitants of Leeds* v. *Maine Crushed Rock & Gravel Co.*, 141 Atl. 73 (Me.); *Commonwealth* v. *John T. Dyer Quarry Co.*, 95 Atl. 797 (Pa.); *Iowa Limestone Co.* v. *Cook*, 233 N. W. 682 (Iowa); *Schumacher Stone Co.* v. *Tax Commission*, 18 N. E. 2d 405 (Ohio); *Wellington* v. *Inhabitants of Town of Belmont*, 41 N. E. 62 (Mass.).

The respondent court contends that even if the Act should require "the existence of a manufacturing plant . . .", the intervener's plant would be such if the term "to manufacture" were not given the restrictive interpretation placed by petitioner, and that there are authorities defining this term as "to modify or to change natural substances, so that they become articles of value or use . . .; the transformation or fashioning of raw materials into a change of form for use . . ." There are without doubt judicial precedents enunciating this doctrine, and it is altogether true that the fact that the original material does not lose its identity is not always an essential factor in ascertaining the meaning of

manufacture. But we cannot construe the pertaining provisions of § 16–B, *supra*, in the sense that a "process of manufacture" is involved in every case in which a natural product is treated and made fit for use. Such interpretation, which is all-embracing and ample, would comprise any treatment of the raw material, no matter how insignificant the former may be, provided the resulting product be fit for use, and would be untenable in the case of legislation which, because it contemplates a special privilege, should be strictly construed without enhancing its scope beyond that which is clearly justified.

To manufacture implies, as already stated, to change, "but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary . . ." *Anheuser-Busch Brew. Asso.* v. *United States, supra.* According to the prevailing doctrine, sanctioned by a majority of the precedents, the superficial change of a natural product, without marked transformation into a substantially new or different article, as is the case with intervener's product, does not amount to manufacturing. *Hartranft* v. *Wiegman, supra; Anheuser-Busch Brew. Asso.* v. *United States, supra; Commonwealth* v. *Snyder's Bakery*, 35 A. 2d 260 (Pa.); *Inhabitants of Leeds* v. *Maine Crushed Rock & Gravel Co., supra.*

In *Francis* v. *Tax Court, supra*, we stated that the term "manufacture" must be defined "as *to work*, as raw or partly wrought materials, *into* suitable forms for use, and as a general rule no article is manufactured until it has been put in condition for sale on the open market for the purposes for which it was intended to be used." (Italics ours.) We did not mean by those words that any change adapting the raw material to any use amounts to manufacture. On the contrary, they indicate that the original material must be converted, changed, and transformed into a manufactured article fit to be used, and we have already expressed our

view as to what should be regarded as a product resulting from a manufacturing process, within the meaning of the Act.

The intervener contends that expert testimony was offered in the respondent court tending to prove that the operations in which it is engaged are manufacturing operations, which evidence was not controverted or challenged by petitioner. The definition of the term "manufacture" and what constitutes manufacturing is not a question of fact but of law, to be decided by the courts. *City of Louisville v. Ewing Vol-Allaren Dairy Co.*, 105 S. W. 2d 801 (Ky.).

The sum claimed in the complaint and allowed in the judgment to the intervener includes the amount of $3,141.66, paid as excise taxes on two trucks imported in June 1950, while § 16–B was in force, as amended by the Act of 1949, which provides, as respects trucks, that there shall be exempt those "exclusively and permanently used in the transportation of raw material and semiprocessed articles on the premises of the industrial plant . . . ," referring to plants whose machinery is exempt which, we have held, must be industrial plants engaged in manufacture. The intervener contends that the afore-mentioned sum was not in issue in the respondent court, and that the judgment on that score "should be affirmed . . . as a matter of routine." We do not agree. If the plant machinery is not covered by the exemption in view of the nature or character of the operations in which it is engaged, neither are the trucks. It is evident that petitioner never intended to acquiesce in the exemption of the trucks, inasmuch as he maintained, as he also does in this Court, that the intervener, not being a manufacturing plant, was not and is not entitled to any exemption. The question in issue requires no further discussion.

The judgment will be reversed and the complaint dismissed.