HARTMAN TOBACCO COMPANY OF PUERTO RICO, INC., demandante y recurrente, v. SECRETARIO DE HACIENDA, demandado y recurrido.

Número 11852.

*Sometido:* 3 de abril de 1959. *Resuelto:* 20 de octubre de 1959.

*Córdova & González* y *Robert E. Schneider, Jr.,* abogados de la recurrente; *Hon. Secretario de Justicia Hiram R. Cancio (José Trías Monge, Ex-Secretario de Justicia,* en el alegato) y *Carlos N. Souffront, Procurador Auxiliar,* abogados del recurrido.

PER CURIAM: La recurrente Hartman Tobacco Company of Puerto Rico, Inc., introdujo en Puerto Rico un equipo de aire acondicionado y una máquina para empacar tabaco

(*baling machine*). En 24 de enero de 1951 la recurrente pagó al Secretario de Hacienda los arbitrios correspondientes por concepto de introducción de dicho equipo y maquinaria. En igual fecha solicitó del Secretario de Hacienda el reintegro de la suma pagada por ese concepto alegando que el equipo de aire acondicionado y la máquina para empacar tabaco estaban exentos del pago de arbitrios bajo la sec. 16(b) de la Ley de Rentas Internas, por ser esenciales para el establecimiento y funcionamiento de una planta industrial. El Secretario de Hacienda denegó el reintegro solicitado y entonces la contribuyente recurrió al Tribunal Superior, Sala de San Juan.

Después de celebrarse un juicio en los méritos, dicho tribunal dictó la siguiente

### "OPINIÓN Y SENTENCIA

"Esta es una acción reclamando la devolución de arbitrios cobrados y pagados sobre maquinaria introducida por la demandante Hartman Tobacco Co. que ella alega está exenta de contribución bajo las disposiciones de la Sección 16-B de la Ley de Rentas Internas. No hay controversia en cuanto a la cuantía que se reclama ni tampoco en cuanto a que la demandante sufrió el peso del pago de la contribución. Por la prueba practicada el Tribunal establece los siguientes:

### "HECHOS PROBADOS Y DETERMINACIONES DE HECHO

"(1) La demandante es una corporación doméstica con oficina principal en Juncos. Importa una clase especial de tabaco en hoja cosechado en Connecticut bajo sombra y conocido como 'Connecticut Shade Tobacco'. Somete dicho tabaco a ciertos procesos en su planta situada en Juncos y luego lo vende comercialmente a manufactureros de Estados Unidos, de Europa y parte a manufactureros locales. Este producto se usa en su casi totalidad para la capa del cigarro.

"(2) El proceso a que la demandante somete el tabaco que recibe se describe así:

"(a) Lo coloca en cuartos que contienen una humedad de un 97% con el fin de darle suficiente humedad a la hoja y que ésta quede más flexible y fácil de manejar.

"(*b*) De ahí se lleva a un cuarto de clasificación y se clasifica únicamente en cuanto al color, contextura y firmeza de la hoja en alrededor de 20 clasificaciones.

"(*c*) Cada clasificación se lleva individualmente a otros cuartos para ser clasificada por el palote.

"(*d*) Luego pasa a un cuarto donde se somete a mayor fermentación durante un período de tiempo cuya duración depende de la contextura y clase. La hoja de contextura más gruesa toma más tiempo en fermentarse.

"(*e*) Pasa entonces a una prensa eléctrica donde se comprime alrededor de una tercera parte de su tamaño original. Así comprimido y bajo controles adecuados de temperatura, humedad y presión termina el proceso de fermentación y queda el producto listo para el mercado. En adición, y por exigencias de los compradores, el tabaco se somete antes de embarcarse a un proceso de fumigación en tanques al vacío para eliminar cualquier insecto en las hojas.

"(3) La maquinaria objeto de los arbitrios en litigio consiste de un equipo de aire acondicionado y de una máquina eléctrica para comprimir el tabaco. Ambos equipos forman parte esencial del proceso de la demandante. El de aire acondicionado se usa para deshumedecer o secar el tabaco, y el otro para comprimirlo.

"(4) Como consecuencia de las actividades de la demandante, el tabaco que ella recibe, el cual ya viene seco en su color marrón, es sometido a un proceso de fermentación que se controla mediante compresión, humedad y temperatura, obteniéndose en esa forma cierto determinado color, y contextura de la hoja aceptable para los manufactureros como capa de cigarro.

"(5) El producto terminado de la demandante es la misma hoja de tabaco que recibe en muchas variedades de color, tratada en forma tal en cuanto a su color y contextura que es de inmediata aceptación en el comercio por los fabricantes de cigarros como hoja de capa.

"CONCLUSIONES DE DERECHO

"A la luz del proceso descrito en las Determinaciones de Hecho anteriormente expuestas, la maquinaria que introdujo la demandante, y que fue objeto del cobro de los arbitrios que se litigan, no está exenta del pago de contribuciones bajo la sección 16-B de la Ley de Rentas Internas, según dicha Sección ha sido

interpretada por el Tribunal Supremo en *Descartes* v. *Tribunal de Contribuciones, Porto Rico Aggregates, Inc., Interventora,* [78] D.P.R. [90] decidido el 18 de marzo de 1955.

"SENTENCIA

"Se dicta Sentencia declarando sin lugar la demanda de devolución de contribuciones.

"Regístrese y Notifíquese."

No conforme con dicha sentencia, la demandante interpuso el presente recurso señalando la comisión de los siguientes errores:

"1. El tribunal inferior erró al decidir que a tenor con el artículo 16-B de la antigua ley de Rentas Internas, según interpretada por este Hon. Tribunal en el caso de *Tesorero* v. *Tribunal de Contribuciones, P. R. Aggregates Co., Interventora,* la maquinaria envuelta no estaba exenta de arbitrios.

"(*a*) Erró al resolver en efecto que el proceso seguido por la demandante-apelante en su planta en Juncos no era uno de manufactura.

"(*b*) Erró en la apreciación de la prueba al determinar que los únicos cambios en el tabaco terminado eran de color y contextura.

"2. El tribunal inferior erró al no decidir que el demandado-apelado estaba impedido de alegar que el proceso seguido por la demandante-apelante en su planta en Juncos no era uno de manufactura y que dicha planta no era una planta industrial manufacturera."

■■ Los errores señalados no fueron cometidos. La sección 16(B) de la Ley de Rentas Internas no exime del pago de arbitrios el equipo de aire acondicionado y la maquinaria para empacar tabaco introducida en Puerto Rico por la recurrente.

De acuerdo con la evidencia presentada por la propia recurrente, ella no fabrica cigarros, sino que en Puerto Rico se limita a clasificar, fermentar, comprimir, empacar y fumigar el tabaco y a su venta y distribución a los manufactureros de cigarros para ser utilizados por éstos como capa de

cigarros. Describiendo el proceso a que somete el tabaco, el presidente de la recurrente, Sr. Richard Newfield declaró lo siguiente:

"P. ¿Dígame, testigo, y la fermentación del tabaco específicamente, qué es lo que la causa?

"R. La aplicación correcta y apropiada de calores, humedad y presión.

"P. ¿Se le añade algún producto distinto, alguna materia distinta a ese tabaco, si se le añade algo?

"R. No.

"P. ¿Lo único que ustedes hacen es humedecerlo, añadiendo humedad?

"R. Se le añade humedad y se le quita, se le vuelve a añadir y se le quita . . .

"P. ¿Cuando usted termina con el tabaco y ya está listo y empaquetado y demás, es la misma hoja del tabaco que usted recibió curada o es una hoja distinta?

"R. Es la misma hoja de tabaco, pero es un producto distinto. La recibimos en forma que no se puede utilizar por ningún manufacturero; cuando terminamos con ella, está lista para usarse por los manufactureros.

"P. ¿Entonces lo que ustedes hacen, además de fermentarla y aligerar el fermentarla, es empacarla y clasificarla en cuanto a tamaño?

"R. "Sí."

(T. de E. pág. 68, línea 22, pág. 69, línea 24.)

En realidad la recurrente no transforma el tabaco en un producto nuevo y distinto, no lo somete a un proceso de manufactura. Todo lo que hace es acondicionar el tabaco para ser usado como capa por los fabricantes de cigarros. Ante estos hechos, el tribunal sentenciador estuvo justificado al aplicar la doctrina del caso de *Descartes, Tes.* v. *Tribl. Contribuciones, Puerto Rico Aggregates, Interventora,* 78 D.P.R. 90.

En términos generales, la sec. 16 (B) de la Ley de Rentas Internas, según ha sido enmendada, declara exento del pago de arbitrios, a todo aparato, maquinaria o equipo que sea esencial para el establecimiento y funcionamiento de plantas

industriales. Declara asimismo dicha sección "que por ser ésta una exención que ampara la maquinaria esencial para el establecimiento de plantas industriales, deberá entenderse aplicable solo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del proceso de manufactura hasta su terminación, . . ."

Interpretando dicha sec. 16(B) dijimos en el caso de la *Puerto Rico Aggregates*, supra, lo siguiente, a las págs. 98, 99 y 100:

"¿Es producto nuevo o distinto el que vende al público Puerto Rico Aggregates Company como consecuencia del proceso industrial descrito en esta opinión? Manifiesta en sus conclusiones el tribunal recurrido, refiriéndose a las operaciones de la interventora y al producto que pone en el mercado, que 'Era el resultado primero, de la eliminación del fango y demás elementos orgánicos inservibles que contenía dicha materia prima, y segundo, en cuanto a los elementos utilizables, de la separación de éstos en piedra y arena; la adaptación y clasificación de la piedra a tamaños deseables para uso inmediato en el comercio, y la refinación de la arena con cierta purificación'. En otras palabras, lo que se expende al público es la misma materia prima, creada por acción de la naturaleza, piedra y arena, sencillamente lavada y reducida en tamaño la primera, y depurada la segunda por la eliminación de toda suciedad o materia orgánica. A la piedra y a la arena, no se le añade nada. Aquélla, terminado el proceso industrial, no sufre cambio alguno. No se le da forma ninguna o apariencia especial o característica, resultado de labor de arte o de destreza, y ni ella ni la arena, se transforman en un producto nuevo o diferente. En vista de las circunstancias que concurren en el caso de autos, debemos llegar a la conclusión de que la maquinaria a que se refiere la controversia no es de la fase fabril productiva que interviene con las materias primas en un proceso de manufactura, dentro del significado de las disposiciones de la sec. 16-B de la Ley de Rentas Internas, criterio que concuerda con el expresado por la gran mayoría de los tribunales llamados a considerar y decidir si constituyen actividades de carácter manufacturero, operaciones muy similares a las que lleva a efecto en su planta la interven-

tora, al resolver la cuestión en forma negativa, sobre todo en casos de estatutos que conceden exención contributiva. *People* v. *Saxe,* 162 N.Y.S. 408, confirmado en 221 N.Y. 601, 117 N.E. 1081; *Commonwealth* v. *Welsh Mountain Min. & Kaolin Mfg. Co.,* 108 Atl. 722 (Pa.); *Inhabitants of Leeds* v. *Maine Crushed Rock & Gravel Co.,* 141 Atl. 73 (Me.); *Commonwealth* v. *John T. Dyer Quarry Co.,* 95 Atl. 797 (Pa.); *Iowa Limestone Co.* v. *Cook,* 233 N.W. 682 (Iowa); *Schumacher Stone Co.* v. *Tax Commission,* 18 N.E. 2d 405 (Ohio); *Wellington* v. *Inhabitants of Town of Belmont,* 41 N.E. 62 (Mass.).

"Expone el tribunal recurrido que aun cuando la ley exigiera 'la existencia de una planta manufacturera . . .', resultaría serlo la de la interventora, de no dársele al término 'manufacturar', la interpretación restrictiva que le imparte el peticionario, y que hay decisiones en las que se define ese término como el 'cambio o modificación de materias naturales en artículos de valor o de uso . . . ; la transformación o adaptación de materia prima en aquel cambio de forma propio para ser usada. . . ' . Se encuentran sin duda alguna precedentes judiciales que enuncian esa doctrina, y es enteramente cierto que el hecho de que la materia original no pierda su identidad, no es siempre factor esencial en la determinación de lo que significa manufacturar, pero no podemos darle a los preceptos pertinentes de la sec. 16-B, supra, la significación de que hay 'proceso de manufactura' en todo caso en que un producto natural sea puesto en condiciones de ser utilizado, interpretación que, por lo amplia y dilatada, abarcaría cualquier acondicionamiento de la materia prima, por nimio que aquél fuere, siempre que como consecuencia de ello pudiera usarse el producto, y que no está justificada, tratándose de una legislación que, por conceder un privilegio especial, debe ser interpretada restrictivamente, sin ampliar su alcance más allá de lo que esté claramente justificado.

"Manufacturar implica, como hemos dicho, cambiar, 'pero no todo cambio es manufactura, y sin embargo todo cambio en un producto es el resultado de acondicionamiento, trabajo y manipulación. Pero algo más es necesario . . . ' . *Anheuser-Busch Brew. Assoc.* v. *United States,* supra. Cambiar superficialmente un producto natural, sin marcada transformación que lo convierta en un artículo sustancialmente nuevo o diferente, que es lo que sucede con el producto de la interventora, no es manufacturar, de acuerdo con la doctrina predominante, sancionada

por la mayoría de los precedentes. *Hartranft* v. *Wiegman,* supra; *Anheuser-Busch Brew. Assoc.* v. *United States,* supra; *Commonwealth* v. *Snyder's Bakery,* 35 A.2d 260 (Pa.) ; *Inhabitants of Leeds* v. *Maine Crushed Rock & Gravel Co.,* supra.

"En *Francis* v. *Tribl. de Contribuciones y Tes.,* supra, dijimos que la palabra 'manufactura' debe ser definida 'como indicativa del proceso mediante el cual las materias primas *se convierten* en un artículo que finalmente quede en forma adecuada para ser usado, y como regla general, ningún artículo ha sido manufacturado hasta que haya sido puesto en condiciones para ser vendido en el mercado abierto, a los fines del uso propio del artículo'. (Bastardillas nuestras.) Con esas palabras no quisimos indicar que cualquier cambio que adapte la materia prima para que pueda ser usada, es manufactura. Por el contrario, ellas demuestran que la materia original debe ser convertida, transmutada, transformada en un artículo manufacturado en forma adecuada para ser usado, y hemos expuesto ya nuestro criterio de lo que debe entenderse por producto resultante de un proceso de manufactura, dentro del sentido de la ley.

"Sostiene la interventora que se presentó evidencia pericial en el tribunal recurrido, tendiente a demostrar que las operaciones a que se dedica eran manufactureras, y que esa prueba no fue contradicha o impugnada por la peticionaria. La definición de la palabra 'manufactura' y lo que constituye manufacturar, no es una cuestión de hecho, sino de derecho, para ser decidida como tal por los tribunales. *City of Louisville* v. *Ewing Vol-Allaren Dairy Co.,* 105 S.W.2d 801, (Ky.)."

Véase además *P. Lorrillard Co.* v. *Ross,* 209 S.W. 39, citado por el Secretario de Hacienda en su alegato.

*Por los motivos expuestos se confirmará la sentencia revisada.*

El Juez Asociado Sr. Santana Becerra no intervino.