## City of Louisville v. Louisville Tin & Stove Company, et al.

### (Decided June 2, 1916.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Taxation—Exemption—Manufactories and Manufacturing Company.—Defendant corporation in connection with a wholesale jobbing business in stoves and tinware conducted a tin shop, in which it made from parts manufactured by others and from raw material which it itself cut and fashioned into shape, coffee pots, buckets, water coolers, stove pipe, drum stoves, ash pans, etc. It afterwards purchased additional ground and installed a new plant at a cost of about $90,000.  In this new plant it accomplished the same results by machinery that were theretofore accomplished by hand, the only difference being that it operated in a more extensive way, made a greater variety of stoves and tinware, and perhaps itself manufactured more of the component parts of the completed articles: Held, that the last plant was not a new manufacturing enterprise entitling it to exemption thereon, but a mere expansion of the old business.

LAWRENCE S. POSTON, PENDLETON BECKLEY and GEORGE CARY TABB for appellant.

DODD & DODD for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

This is a suit by the city of Louisville against the Louisville Tin & Stove Company to recover taxes for the years 1908 to 1911, inclusive, on its real estate and plant located on the north side of Maple street.  The chancellor held that the property was exempt, under an ordinance of the city of Louisville, enacted July 29th, 1898, pursuant to section 170 of the Constitution and section 2980a of the Kentucky Statutes, authorizing municipalities to exempt manufacturing establishments

from municipal taxation for a period not exceeding five years as an inducement to their location. The city appeals.

The evidence develops the following facts: The defendant was incorporated in September, 1888, with a capital stock of $20,000.00, and from that time on has conducted a stove and tin business in the city of Louisville. Its first place of business was at 621 Main street, where were located its warerooms, its buying and selling department, and tin shop. The business grew and it became necessary from time to time to have additional quarters. To that end it acquired two buildings on Eighth street, in which it maintained additional warerooms and its tin shops. Their stock being large, they subsequently procured other places for storage and warehouse purposes.

On May 18th, 1903, defendant's articles of incorporation were amended so as to authorize an increase in its capital stock to $200,000.00. In October, 1905, and January, 1906, it acquired the lot on Maple street which is involved in this controversy, and erected thereon very large and extensive improvements at a cost of about $90,000.00. The officers of the company say that prior to September, 1906, the business conducted by defendant was that of a jobber. It bought its tinware and stoves from wholesalers and manufacturers and sold them as a jobber to retail merchants. During the year 1906, the company finding that its profit was small, because of the great competition in the business and the excessive prices which they had to pay to the manufacturers and wholesalers from whom they made their purchases, determined to make arrangements to manufacture its own stoves and wares. To that end it purchased the lot on Maple street and installed the necessary machinery. From that time on it proceeded to manufacture steel ranges, cook stoves, heating stoves, hot blast heaters, air tight heaters, hot tomale heaters, ranges, stove pipe, refrigerators, ice chests, buckets, water coolers, syrup pails, oil cans, garbage cans and pails, copper tanks, and sheet metal goods of tin, galvanized steel and zinc.

Before locating its Maple street plant in the city of Louisville the defendant was solicited to locate it in several other cities, among them, Charlestown, West Virginia; Kansas City, Missouri; Wichita, Kansas, and An-

derson, Indiana, and these places were considered by its directors and stockholders.

Of course, if defendant's plant on Maple street was, as a matter of fact, an entirely new manufactory which had not theretofore existed in the city and it was induced to locate its plant in the city by the offered exemption, the property in question is exempt. On the other hand, if the new plant was a mere expansion of a manufacturing business theretofore conducted, the property is not exempt. Mengel Box Co. v. Sea, Tax Receiver, 167 Ky. 193, 180 S. W. 346; Louisville Car Wheel & Railway Supply Co. v. City of Louisville, 146 Ky. 573, 142 S. W. 1043. The case, therefore, turns on whether or not defendant was conducting a manufacturing establishment prior to the installation of the new plant, and the answer to this question depends on the character of the work done by defendant in what is called its tin shop. In its tin shop about twenty men are employed. While not occupied with repair work they were engaged in what the officers called "assembling" coffee pots, buckets, water coolers, sprinklers, stove pipe, drum stoves and ash pans. The tops, ears and bails of the buckets were bought, as were the spouts, handles and tops of the coffee pots, and the legs, doors, etc., of the drum stoves. The bodies of the tinware were made from sheet tin, which was cut and shaped by the tinners to fit the purchased parts, and the whole was soldered together so as to make the completed articles. The steel out of which the stove pipe, ash pans and stoves were made came in flat sheets, which were cut and shaped by hand, and from the sheet steel in its crude condition were evolved the completed articles.

We do not understand that in order for a business enterprise to be a manufactory it is necessary for it to be engaged in the business of making completed articles from materials that are altogether raw. It is none the less a manufactory if, as in this case, it combines separate parts manufactured and completed by others with raw material which it itself cuts and fashions into proper shape, and thus produces an entirely new article suitable for use. Thus it will be seen that, although it may be true that defendant's chief business prior to 1906 consisted in selling articles manufactured by others, yet it had in its tin shop about twenty men who were employed for a considerable portion of their

time in manufacturing complete coffee pots, buckets, water coolers, sprinklers, stove pipe, drum stoves, and ash pans. In other words, it accomplished in its tin shop by hand the same results that it afterwards accomplished by the use of machinery in its Maple street plant, the only difference being that it operated in a more extensive way, made a greater variety of stoves and tinware, and perhaps itself manufactured more of the component parts of the completed articles. That being true, defendant cannot be regarded as having been a mere wholesale jobber before September, 1906. As a matter of fact, it was a manufacturer and its new plant was but an expansion of the manufacturing business which it had theretofore conducted. It follows that defendant is not entitled to exemption from taxation for the years in question.

Judgment reversed and cause remanded for proceedings consistent with this opinion.