NORTHWESTERN STATES PORTLAND CEMENT COMPANY, appellee-cross-appellant, v. BOARD OF REVIEW of CITY OF MASON CITY, appellant-cross-appellee.

No. 48258.

(Reported in 58 N.W.2d 15)

APRIL 8, 1953.

Ray E. Clough, of Mason City, for appellant-cross-appellee.

Smith & Beck, of Mason City, for appellee-cross-appellant.

BLISS, J.—We·will refer to the Cement Company as the plaintiff and to the Board of Review as the defendant. The plaintiff operates a large plant in Mason City, Iowa, to manufacture Portland cement. It owns a substantial amount of land underlaid with both limestone and clay which it quarries and excavates for use in the manufacture of cement in the plant located on this land.

On or about May 31, 1951, the assessor of Mason City, as of January 1 of that year, made an assessment for taxes against certain personal property of plaintiff in which, with other kinds of property, all taxable as personal property, was a quantity of finished cement assessed in the sum of $22,173, and a quantity of raw material in the factory, in the process of being made

into cement, which was assessed at $3387, all as shown in Assessment Roll No. 2351.

At this time an assessment was also made against other personal property of plaintiff consisting of new machinery and equipment which it had installed in its main manufacturing plant or factory during the years 1949 and 1950, but which had not been assessed in either of those years. While it was personal property, under Code section hereinafter set out, it was required to be, and was, for the purposes of taxation, regarded as, and assessed as, real estate. As shown by Assessment Roll No. 2160, this new machinery and equipment was assessed at $297,344.

On June 18, 1951, plaintiff filed with the defendant, Board of Review, a separate written protest against each assessment. As noted above, the first mentioned assessment totaled $25,560. In its protest plaintiff stated that the assessment should have been $8840, and that the overassessment was $16,720. We will set out the basis for this claim of excessive valuation as stated by plaintiff hereinafter, when we discuss it more fully.

In its protest against the assessment of the new machinery and equipment there was no claim made that it was excessive, but it asked that it be canceled as illegal and void, for the reason that, since under the statute the machinery used in a manufacturing establishment must be regarded as real estate for taxation purposes, the "machinery and equipment referred to in said Assessment Roll No. 2160 was nonassessable for the year 1951 for the reason that the year 1951 was not a year in which real estate was listed and valued for taxation, and the same [machinery and equipment] neither constituted omitted real estate nor buildings erected since the previous assessment on real estate, as provided and defined by law." The protest contained no other ground or objection.

The Board of Review denied each of the protests and confirmed each of the challenged assessments. Plaintiff duly appealed to the district court from the ruling on each protest. On December 20, 1951, plaintiff filed its petition in the district court, and in Division I thereof are found the allegations with respect to the assessment in Roll No. 2351, being the one against

which plaintiff filed the protest first referred to herein. Commencing with paragraph 13 of the petition, it is alleged that: The assessment of $25,560 was 60% of the 100% valuation of $42,602 made by the assessor; the items of the finished cement, 184,780 barrels; clinker, 22,466 barrels; limestone, 16,105 tons; and clay, 29,391 tons; the assessor in his 1951 assessment valued the average inventories of plaintiff's finished cement and clinker each at twenty cents a barrel, the limestone at sixty cents a ton, and the clay in storage at forty cents a ton; the assessor arrived at these valuations by estimating the value of the clay and limestone entering into the finished cement and the goods in process at the time the same entered the primary crusher at plaintiff's manufacturing plant; that all such limestone and clay was acquired by plaintiff and was quarried and removed from the land which it had purchased in the vicinity of the plant, and was conveyed to the primary crushers by the plaintiff with its machinery and equipment, which was included in plaintiff's manufacturing machinery and equipment for the purpose of assessment for taxation and constituted a part of its manufacturing establishment; the average full and fair value of all such limestone and clay before the same was quarried, dug and removed from plaintiff's land was 5.42 cents per ton for the limestone, and 8.42 cents per ton for the clay, and that based on these values the average full and fair value of the clay and limestone which entered into plaintiff's average 1950 clinker inventory was 1.84 cents a barrel, and which entered into the average 1950 inventory of finished cement was 5.94 cents a barrel; the plaintiff acquired all of this land with its clay and limestone for the purpose of manufacturing cement; the plaintiff's process of manufacturing, for all purposes incident to the valuation and assessment of its personal property for taxation, commences with the digging and removing of the limestone and clay from its quarries and fields; the plaintiff's average inventories of finished cement and goods in process of manufacturing should be valued for assessment purposes under the laws of Iowa upon the basis of the value of the limestone and clay entering into such inventories before the same were quarried and removed by plaintiff from its limestone and clay fields, that is,

upon the basis of 5.42 cents per ton for limestone and 8.42 cents per ton for clay.

Based upon valuations determined in this way plaintiff alleged in its petition that the barrels and tons of limestone, clay and clinker, listed above, were of a taxable or assessed value of but $8840, instead of $25,560, the 60% valuation fixed by the assessor. Plaintiff so contends in this court, as it did in the district court, which confirmed the taxable valuation of the assessor and the order of the Board of Review.

Since the second protest of plaintiff, which challenged the assessment against the machinery and equipment in its factory made by the assessor, and which, after some adjustments, was fixed by the Board at $297,334, involves the construction of some tax statutes we think it well to here set out the pertinent parts of these statutes.

Section 428.4, Code of 1950, I. C. A., provides: "Property shall be taxed each year, and personal property shall be listed and assessed each year in the name of the owner thereof on the first day of January. Real estate shall be listed and valued in 1933 and every four years thereafter, *and in each year in which real estate is not regularly assessed, the assessor shall list and assess any real property not included in the previous assessment,* and also any buildings erected since the previous assessment * * *." (Italics ours.)

Section 428.20, Code of 1950, I. C. A., is: " 'Manufacturer' defined—duty to list. Any person, firm, or corporation who purchases, receives, or holds personal property of any description for the purpose of adding to the value thereof by any process of manufacturing, refining, purifying, combining of different materials, or by the packing of meats, with a view to selling the same for gain or profit, shall be deemed a manufacturer for the purposes of this title [Taxation], and shall list such property for taxation."

Section 428.21, Code of 1950, I. C. A., is: "Assessment—how made. Such personal property, whether in a finished or unfinished state, shall be assessed at the same ratio as provided in section 441.13 [it is 441.4 in I. C. A.] of its average value estimated upon those materials only which enter into the combina-

tion, manufacture, or pack, such average to be ascertained as in section 428.17."

Section 428.22, Code of 1950, I. C. A., is: "Machinery deemed real estate. Machinery used in manufacturing establishments shall, for the purpose of taxation, be regarded as real estate."

We have already stated the basis of plaintiff's protest to the Board against the assessment of new machinery and equipment placed in the manufacturing plant. This new machinery and equipment costing approximately a million dollars was installed in 1949 after January 1, and in 1950. For the purpose of taxation it was regarded as real estate, as provided in section 428.22, supra. These matters are conceded by both parties.

The year 1949 was the year for assessing real estate. Since the new machinery and equipment was not in the plant "as of January 1st", no part of it was assessed as real estate in 1949. The installation was completed in 1950 but none of this property was assessed in that year. In 1951, since this new machinery and new equipment was deemed real estate for taxation, it was assessed as provided in the italicized lines in the copy of section 428.4, supra, as "any real property not included in the previous assessment". It was the position of the plaintiff before the Board and the trial court, and is on this appeal, that this property was assessable only in the years in which real estate was regularly assessed, and that it could not be assessed in any other year, since it was not in fact "real property." For this reason plaintiff insists that the assessment in 1951 be canceled, in its entirety, as invalid.

The trial in the suit was begun in the district court on March 10, 1952, and after submission on written briefs and arguments was orally argued on April 2, 1952, and submitted to and taken under advisement by the court. On June 16, 1952, the district court, of its own volition, and without any suggestion, motion or application on the part of either party, reopened the case, as stated by the court, for "additional testimony taken for the purpose of acquainting the court with how much of the machinery out at the [plaintiff's] plant was replacement machinery and how much was not replacement machinery but new

machinery placed in there for a purpose that was not there before."

Defendant objected to the reopening as not complying with rule 192 of the Rules of Civil Procedure, violative of section 405.24, Code of 1950, being clearly beyond the grounds of the protest, and any issue raised or presented before the Board, beyond the pleadings in the district court, not mentioned in the opening statement of plaintiff, nor in oral or written argument to the district court. The objection was overruled. Defendant ably and soundly argues in this court that the trial court abused its discretion, and asks for a reversal because of prejudicial error in reopening the case. Since we are deciding the case on its merits it will be unnecessary to rule upon the procedural error raised.

On reopening the case, Peter Andersen, secretary-treasurer and a director of plaintiff, who had previously testified for it, was recalled by it, and asked to state what the books of plaintiff showed was the total cost of the new machinery and equipment which was added to the plant of the plaintiff during the years 1949 and 1950. His answer was $1,022,343.01. To comply with the trial court's reason for reopening the case he was asked to state what portion of this amount was to replace worn-out machinery and equipment, and what portion was to install machinery and equipment for a new use or function. Accepting his testimony as given—and it would have been difficult to refute it—the amounts spent for the purpose last-stated were $10,768.45 for new additions to the plant water system; $87,734.36 for air separators, which "did not replace machinery and equipment which was formerly in the plant. These air separators performed a new and different function from any machinery and equipment in the plant at the time they were installed." Continuing, the witness said: "The next item is dust collectors for $77,733.31. These dust collectors did not replace machinery and equipment which was in the Mason City plant. * * * The next item is for a truck-turn-around at the crusher building for $15,567.40. This truck-turn-around did not replace machinery and equipment which was formerly in the plant." These items of new machinery and equipment which had never been in the plant

until 1949 and 1950 and which replaced no old or used machinery and equipment cost the plaintiff $191,803.52. The trial court found the amount of this new and additional machinery and equipment to be $51,402.70, but gave no figures to justify it. We find no evidence in the record to sustain such finding.

Mr. William Clemenshaw, an appraisal expert whose company has its headquarters in Cleveland, Ohio, and who had been employed by the three taxing bodies of Mason City to appraise the taxable real estate in 1949, and the taxable personal property in 1950, for the 1951 assessment year, was a witness for defendant after the reopening of the case. He testified that in 1949 and 1950 he had discussed with Mr. Andersen the appraisal of plaintiff's property, and the latter had given him audits of the company for those years, and that he made typewritten notes from these audits to aid him in the appraisal. These notes (Exhibit No. 20) were received in evidence. The total of the items of expenditures for new machinery and equipment as shown in these notes was $1,144,711.98, but after rechecking the various items and eliminating some that he thought should not be considered he testified that: "I came to the conclusion that the total additions in the years 1949 and 1950 was a total of $991,116.19. That was the total cost of the additions." His familiarity with the old machinery and equipment was not sufficient to enable him to know what part of the new installations replaced old machinery and what part was newly added, so he gave no testimony in that respect. He did not discuss this matter with Mr. Andersen. It is apparent that neither Mr. Andersen nor Mr. Clemenshaw gave any consideration to the trial court's theory.

Mr. Clemenshaw testified as to how he arrived at the figure of $297,334, which he recommended to the assessor, as the proper 1951 assessment for the new machinery and equipment that was installed in 1949 and 1950. He took into consideration that "the cost trend of machinery and new equipment averaged about 100 per cent higher than the values that were used in these appraisals at the time they were made in 1948." He was also asked whether he made an adjustment on the basis that some of this machinery was replacing old machinery. He answered:

"Yes. * * * As I said before we did not make a piecemeal inventory of each item of machinery and equipment because time did not permit * * *; but it was generally known that much of the machinery and equipment of the cement plant was very inadequate and antiquated and in our opinion had probably been written off the books many years ago. Most of it was living on borrowed time, and it was now being replaced with something new, and it was undepreciated * * *." Taking into consideration the higher trend in prices and the worn-out and obsolescent condition of the old equipment and machinery and its depreciated value because thereof, as evidenced in the 1949 assessment of real property, he testified he reduced his total figure of $991,-116.19 by 50%, thus reducing it to $495,558.09, and then took 60% thereof to arrive at the taxable valuation of $297,334.85, which he recommended to the assessor.

 I. The plaintiff does not question the fairness of the amount of this assessment, but it contends that since it is regarded as real estate for the purpose of taxation it could be assessed and taxed only in the regular, every fourth, year, in which real-estate property is assessed and taxed, and that the assessment of it in the year 1951, which was not a regular year for taxing real estate, was therefore illegal and void.

Code section 428.22, supra, provides that machinery used in manufacturing establishments shall be regarded as real estate for taxation purposes. The property assessed in 1951 was of that description. It must be deemed real estate, or regarded as such, in its assessment and taxation. It was real estate within the purview and purpose of Code section 428.4, supra. It had never been assessed until the year 1951, so for the purpose of taxation— and that is the only purpose of said section 428.4—it was "any real property not included in the previous assessment", as provided in said section. In the assessment of 1951 it was to be considered and assessed for taxation just the same as any land, improved or unimproved, "not included in the previous assessment" in 1949. Such a construction or interpretation is clearly and fairly applicable to the quoted language of the section, and such an intent on the part of the legislature is plainly and reasonably expressed therein. Unless excepted or exempted it is

the established law of this state that all property is to be taxed. Cherry v. Board of Review, 238 Iowa 189, 192, 26 N.W.2d 316, 317. It is to be presumed that in enacting tax laws the legislature so intended, if the language used fairly expresses such intention. Assuredly, it must not be presumed that any legislature intended to enact laws permitting the nullification of such recognized rule of law. In the instant case the plaintiff installed the new machinery in 1949 to the approximate value of $769,000, and in 1950, of $220,169. If the contention of the plaintiff is the law of this state, then the state will be deprived of taxes on the machinery installed in 1949, for the years 1950, 1951 and 1952, and for that installed in 1950, for the years 1951 and 1952. Under such statutory construction as the plaintiff urges upon the court, manufacturers will confine their installation of new machinery to the regular year for assessing real estate so as to avoid the largest possible tax burden. It is our conclusion that the legislature did not so intend and did not so enact that such an enormous escape from taxes should be permitted to manufacturers.

We find no opinion of this court directly in point in the construction of the statutory sections quoted above. The plaintiff has cited none that is applicable. In support of the construction contended for by defendant, Louis H. Cook was a witness in its behalf. For thirteen years he had been Director of Research for the Iowa State Tax Commission, and before that he was chairman of the original Iowa State Tax Commission, beginning in 1929. He has devoted his adult life to the study of tax problems. He was familiar with the tax laws of Iowa and to interpretations placed upon them by the tax commission and by tax officers. The tax commission has supervision over all matters relating to tax assessments and collections in Iowa. He testified that it has been the interpretation of the commission and of himself that new machinery installed in a manufacturing plant in some year other than a year for the regular assessment of real estate shall be listed and assessed by the assessor or by the Board of Review as real estate not previously listed and assessed in a regular year for the assessment of real estate. Plaintiff offered no evidence to the contrary.

It is the contention of plaintiff that it is not liable for any taxes under the assessment of $297,334 for new machinery, because such assessment is illegal and void. The trial court decreed that $245,931.50 of said assessment was improper because new machinery in that amount was purchased and installed to replace worn-out and obsolete machinery which theretofore had been valued and assessed for the purposes of taxation, and the sum of $51,402.70 of the assessment represented new machinery added to the plant to perform functions not theretofore performed. The court held the latter amount was a properly assessed valuation.

It was the court's express reasoning that the assessment of the machinery in 1949 would carry forward for four years and its deterioration and obsolescence would probably substantially balance the replacement of new machinery. It does not appear to this court probable that the old machinery would depreciate from 1949 to 1950, both inclusive, to the extent of almost a million dollars, the approximate cost of the new additions.

The court also said: "Also, since old machines in plaintiff's plant in 1949 were included in the valuation of plaintiff's machinery for the next succeeding four years, to add a new machine replacing such old machine during the four-year period, and also adding the taxable value of the new machine in the year following its installation, would result in the plaintiff being taxed upon the old machine which had been removed from the plant, and also the new machine at the same time, thereby resulting in double taxation of the plaintiff."

We cannot follow the able trial court all the way. Double taxation is twice taxing the same identical property. The assessor and the Board did not do that. In 1949 they assessed, as real estate, worn-out and obsolescent machines—some installed in 1920. That assessment was placed against machinery of a greatly depreciated value—much of it charged off on the books of plaintiff in years past. But in 1951 the valuation and assessment was on different machinery—neither old, inadequate nor antiquated—but on new, up-to-date machinery and equipment, purchased at high prices. The assessment on machinery of that high value ought not be offset and obliterated almost entirely

as was done by the trial court. It allowed an assessment of $51,402.70 on machinery which was not replacement, which amount we find should have been $191,803.52 were we to follow the trial court's theory with respect to nonreplacement machinery. But we do concede that the value of a new machine in the 1951 assessment should not be added to the 1949 assessment of the old machine, but that the 1951 assessment should replace the 1949 assessment of the old machine. In other words, that the latter assessment should be deducted from the 1951 assessment. That is just what Mr. Clemenshaw effected in arriving at the assessment on this new machinery, which he recommended to the assessor. He considered that the new machinery was bought at appreciated prices, 100% above what was paid for the old machinery, and that most of the old machinery "was living on borrowed time", and of greatly depreciated value. He made a compromise adjustment between the two to arrive at a 60% assessed, or taxable, valuation of $297,344 on this new machinery. It is our conclusion that the trial court erred in confirming but $51,402.70 of this assessment and that the entire assessment of $297,344, as fixed by the assessor and sustained by the Board, should have been confirmed by the district court.

We here note that the district court, in confirming the assessment in the amount of $51,402.70, agreed with the defendant, that new machinery regarded as real estate, not assessed in a previous year, could be assessed in a year other than a regular year for assessing real estate, as provided in Code section 428.4, supra. Such is the conclusion of this court.

We have no disagreement with the court's opinion in Des Moines Water Co. v. Hammill, 187 Iowa 949, 174 N.W. 772, Tallman v. Treasurer of Butler County, 12 Iowa 531, Des Moines Navigation and R. Co. v. County of Polk, 10 Iowa 1, Richards v. Wapello County, 48 Iowa 507, and other cases cited by plaintiff, but we do not consider them applicable or pertinent under the facts.

II. We return now to the first protest—the one against the assessment of the finished cement and the material in process of manufacture. The assessor assessed the personal property, and the Board sustained it on the basis of the limestone broken

to pieces five inches wide or less, delivered from the quarries to the primary stone crusher at the manufacturing plant, and on the value of the clay as it is delivered to the plant from the clay pits. Limestone, clay and gypsum are the component parts of cement. Plaintiff has no gypsum and buys it F.O.B. Fort Dodge, and pays the freight on it delivered to its plant. We note here that in its estimated values of the component parts of manufactured cement it did not include the value of the gypsum.

Plaintiff insists that the limestone and clay should not be valued as these products are delivered at the mill, after the limestone has been dynamited out of the place where Nature or other Higher Power placed it or it was formed, and it has been broken into small pieces and loaded into dummy railroad cars, or into motor trucks and conveyed to the plant; and that the clay should not be valued after it has been excavated from the pits and loaded and conveyed to the plant in like manner, to the limestone.

Plaintiff contends that this raw material should not be valued as "personal property" as stated in Code section 428.21, supra, after its value has been increased by the application of dynamite, tools, machinery, for quarrying, loading, conveyance to the mill, and the labors of men, all of which were required to make it available for the actual manufacture of cement, but that this value for the determination of the cost and value of the finished cement, or of ingredients in the process of manufacture, should be made of them not as personal property but in their natural condition as parts of the earth. In other words, as real estate or land, unchanged by artificial means.

Mr. Cook, hereinbefore referred to, testified that he was familiar with Code sections 428.20 and 428.21 of the 1950 Code dealing with the assessment of materials of manufacturers; and that the tax commission and he have interpreted those sections to require the valuations of materials going into the manufacture of finished products and material in process, to be made at the point immediately prior to the first manufacturing operation; and that the word "material" as so interpreted means usable material immediately prior to the first manufacturing operation;

that "material" does not necessarily mean the absolutely raw or crude product, but it may and often does include such products after their value has been increased by labor and machinery or other artificial change. Such interpretation had been employed by the tax commission for a period of over twenty years. Andrew S. St. Regis, chief deputy assessor for Des Moines, gave similar testimony. He testified that he had so valued and assessed materials of various kinds in the manufacture of different kinds of finished products, including cement. No testimony was offered to the contrary by the plaintiff.

Testimony of the kind given by these witnesses of defendant is entitled to much weight by courts, and where the administrative interpretation of a statute is of long standing it will not be lightly discarded. State ex rel. McElhinney v. All-Iowa Agricultural Assn., 242 Iowa 860, 868, 48 N.W.2d 281; Heiliger v. City of Sheldon, 236 Iowa 146, 164, 18 N.W.2d 182; State v. Robbins, 235 Iowa 602, 608, 15 N.W.2d 877; John Hancock Mutual Life Ins. Co. v. Lookingbill, 218 Iowa 373, 386–390, 253 N.W. 604.

The fact that labor may have increased the value or form of the original raw matter is not material. The hide of the animal is raw material to the tanner, but leather is raw material to the manufacturer of shoes or other leather goods. See also City of Henderson v. George Delker Co., 193 Ky. 248, 235 S.W. 732; State v. Hennessy Co., 71 Mont. 301, 230 P. 64; City of Louisville v. Louisville Tin & Stove Co., 170 Ky. 557, 186 S.W. 124; Iowa Limestone Co. v. Cook, 211 Iowa 534, 536 et seq., 233 N.W. 682. In the last cited case we held that blasting stone and breaking it into merchantable size was not a manufacturing process.

We have read Appeal of the Iowa Pipe & Tile Co., 101 Iowa 170, 70 N.W. 115, and Lichty v. Board of Review, 230 Iowa 756, 298 N.W. 654, but they do not rule in the decision of this case.

The gypsum which plaintiff uses in the manufacture of its cement is purchased by it at Fort Dodge and shipped to Mason City. Of course, plaintiff pays for the cost of its production and conveyance to its plant, and all elements of its costs are factors in determining the value of the finished cement. Like-

wise, the cost of getting its limestone and clay to its crushers is increased by the labor in getting it there, and that labor of man and machine is a factor in determining the assessed value of the finished or unfinished product. The quarrying of the stone and the digging of the clay and conveying it to the cement mill is merely making this material available for its manufacturing process at its factory. It is no more a part of the manufacture than the procuring of the gypsum from Fort Dodge. But whether it be limestone or clay made available by the labor of its own employees and machines and other equipment, or it be gypsum which it buys from another, the cost of getting all of it to the entrance of its mill is a proper factor in determining its assessed value, and the assessed value of the cement.

The trial court sustained the Board in denying plaintiff's protest against the assessment of this material, and its conclusions of law, saying: "In so far as the valuation of the material entering into the manufacture of the finished product, for instance, cement, is concerned, it would not make any difference whether the clay or limestone was purchased from others, dug from plaintiff's own clay pit or from its own limestone quarry, or was given to the plaintiff without charge. In all three instances these materials should be valued on the ground ready to be placed in the primary crusher. The statutes in question are taxation statutes and should be uniformly applied, regardless of the source or method of acquiring such materials."

The decree of the court in sustaining the assessment of the finished cement, and the materials in process of manufacture, as fixed by the assessor and sustained by the Board of Review, in the sum of $25,560 is affirmed, and the cause is remanded to the district court for judgment and decree in conformity herewith on each protest of plaintiff, to the end that the assessment of $25,560 noted just above and the assessment of $297,344 are both sustained.

All costs in the district court and in this court are taxed to the plaintiff.

The judgment and decree is—Reversed in part and affirmed in part.

All JUSTICES concur.