MESKER BROTHERS INDUSTRIES,
INC., Appellant,

v.

George C. LEACHMAN, Collector of Revenue, and Frank J. Antonio, Assessor, St. Louis County, Missouri, Respondents.

MESKER INDUSTRIES, INC., Appellant,

v.

George C. LEACHMAN, Collector of Revenue, and Frank J. Antonio, Assessor, St. Louis County, Missouri, Respondents.

Nos. 58886, 58887.

Supreme Court of Missouri,
Division No. 2.

Nov. 10, 1975.

Donald S. Hilliary, Clayton, for appellant.

George W. Lang, II, Asst. County Counselor, Clayton, for respondents.

HENRY I. EAGER, Special Commissioner.

This appeal involves the liability of a manufacturer in St. Louis County for man-

ufacturers' taxes (Chapter 150, RSMo 1969)[1] on "work in process." The specific section involved is § 150.310, which provides in pertinent part as follows: " * * * 1. Every manufacturer in this state shall be licensed and taxed on all raw material and finished products, as well as all the tools, machinery and appliances used by them, in the same manner as provided by law for the taxing and licensing of merchants; * * ." The present appeal includes two cases which were consolidated here; they involve the same plaintiff and the same issues but for taxes of different years (1972 and 1973). All the substantive facts were stipulated, and the cases were tried together in the Circuit Court. Plaintiff (whose name was slightly changed between the filing of the two suits) is a manufacturer of steel doors and frames and is required to be licensed as a manufacturer under Section 150.310. The forms for the required return included a space for "work in process," and the accompanying explanation required that item to include labor, factory overhead and "burden." In 1971 plaintiff filed its return for the 1972 tax which included amounts for raw materials, work in process and finished products; it received a statement for a total license tax of $23,662.67, of which $6,119.99 represented work in process. Plaintiff did not appeal the assessment to the Board of Equalization, but its President and Counsel appeared before the Board on December 30, 1971, prior to payment, and discussed the item of work in process, claiming that it was improperly included; they were told (by Mr. Zafft, a member of the Board) that the Board would not remove the item but would only determine whether the value allocated to it was "lawful and fair." On December 31, 1971, plaintiff paid the full tax, but by two checks (one for the $6,119.99) accompanied by a letter in which it "amended" its return by removing the item of work in process, and stated that the tax therefor was paid under protest because that item of property was not taxable under the terms of § 150.310.

The letter also stated that plaintiff had been advised that if the tax was not paid in full at that time, a license would not be issued for 1972 and the nonpayment would be certified to the Prosecuting Attorney for appropriate action; also, that the payment was thus being made involuntarily. The work in process was not returned or taxed as personal property, but only as a part of the manufacturers' tax. The valuations and rates would have been the same under either classification. It is true that if a manufacturer fails to pay his tax in full, no license will be issued, and that the Department of Revenue of the county will certify the nonpayment to the Prosecuting Attorney. On March 21, 1972, plaintiff filed the first of the present suits under Section 139.-031 (the "protest statute") seeking recovery of the amount paid under protest and an injunction against collection.

For 1973 plaintiff failed to file a return and its work in process was assessed at $111,320. That valuation is not contested; the "work in process" was not returned or assessed as personal property. Plaintiff did not appeal that assessment to the Board of Equalization. It again paid the controverted sum ($8,474.75) under protest with a protest letter as described above for the 1972 tax. On March 26, 1973, plaintiff filed suit under Section 139.031 for the recovery of the controverted sum paid for 1973 and for an injunction against collection.

The two cases were tried together before the Court and judgments entered for the defendants, without opinion. The parties stipulated to what the testimony of a certified public accountant would have been if offered by plaintiff and admitted. It was, in substance: that "work in process" and finished goods are distinctly different and mutually exclusive entities; that work in process is raw material which has been altered after energy has been spent upon it so that it is no longer identifiable in its original form; that inventory in manufacturing includes three separate and distinct classes

---

of personal property, i. e., finished goods, work in process, and raw materials. Objections were preserved to the stipulated testimony,—that it would constitute an invasion of the province of the court, that it was irrelevant and incompetent as a legal construction of the statute, that the legislative intent could not be supplied by parole evidence, and for other reasons.

■ Before reaching the merits we are met with respondents' contention that the judgment here should be for defendants because plaintiff failed to avail itself of the statutory administrative procedure by appealing to the Board of Equalization, and if necessary, to the State Tax Commission; this, they say, constituted an adequate remedy at law. The plaintiff proceeded in each case under § 139.031(1), which is as follows: "Any taxpayer may protest all or any part of any taxes assessed against him, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which his protest is based, and shall further cite any law, statute, or facts on which he relies in protesting the whole or any part of such taxes." This section appears in the general Chapter on "Payment and Collection of Current Taxes." It is conceded that plaintiff complied therewith and also with subsection (2) requiring the filing of suit within 90 days. This statute was enacted in 1969, certainly for some purpose; one purpose obviously was to relieve the taxpayer of the payment of interest and penalties, but the statute may also be used to avoid sanctions which might otherwise be applied, such as here, the refusal to renew plaintiff's license. The statute is broad in form and its title includes, " *   *   * procedures for the recovery of taxes erroneously or illegally collected" (Laws 1969, p. 249); it is applicable in all counties in the state, and it contains no special limitations. The action required is not necessarily an action in equity, but it would seem to include some features there-

of, and plaintiff here states some equitable grounds for relief. We may consider the adequacy of another remedy or remedies. The only one suggested is that of an appeal to the Board of Equalization. Those provisions appear in Chapter 138, and are applicable statewide. The function of these Boards is to adjust the valuations of the assessor by raising or lowering them, to give notice thereof, and to hear appeals from such valuations. This power is expressly extended to a review of Merchants' and Manufacturers' taxes in first class counties by § 138.120. It is not stated in these statutes that the remedy by appeal to the Board is exclusive of all other remedies. In this case it is stipulated that plaintiff's representatives were told by a member of the Board (upon an informal appearance) that the Board would *not* remove the item of "work in process" from plaintiff's assessment, but would only determine whether the valuation allocated to it was lawful and fair. There is no contest here on that valuation and, in fact, plaintiff concedes that it is proper (on both years) if the item is taxable at all. Chapter 150 of our statutes clearly indicates that a manufacturer cannot lawfully operate without a license and that a license for the ensuing year will be refused unless the assessed taxes are paid in full. It was stated in plaintiff's protest letter that it had been advised that a license would be refused if the tax was not paid in full at that time; and defendants seem to concede this. In this case the issue was not really one of valuation (although possibly the total value might have been considered) but of statutory construction. In view of the foregoing it is unnecessary to consider any other reason advanced by plaintiff to support its right to proceed as it did. We conclude that plaintiff had the right to pay the taxes under protest and file these suits under § 139.031.

The cases of *Cupples-Hesse Corp. v. Bannister,* 322 S.W.2d 817 (Mo.1959), and *Brinkerhoff-Faris Trust & Savings Co. v. Hill,* 323 Mo. 180, 19 S.W.2d 746 (banc 1929), did not involve the applicability of § 139.031

which was enacted in 1969, and both involved only questions of valuation. The opinion in *John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59 (Mo.1974), recognizes the broad scope of § 139.031 as a means of testing the legality of a tax, although stating that it is not the proper remedy for a mere reevaluation. Under all the facts and circumstances here, including the fact that plaintiff would have been denied a license if the taxes were not promptly paid in full, we hold that plaintiff was not precluded from proceeding under § 139.031 as it has done here.

This brings us to the merits. The sole issue is whether § 150.310(1), imposing the license tax on "raw material and finished products," includes work in process. An amicus brief has been filed here on behalf of McDonnell Douglas Corporation; its principal contention is that if work in process is taxable at all, which it denies (citing recognized rules of construction and many cases), it must be valued and taxed merely at the value of its raw material content. McDonnell Douglas has a pending proceeding in which the Missouri Tax Commission has apparently so ruled, and that decision is said to be now on review. The primary issue raised in that brief, namely, the one of *valuation,* is not before us in this case. Plaintiff *concedes* that the values are correct if the item is taxable at all. We decline to consider collaterally the issue which the amicus curiae seeks to raise here and shall consider its brief only on general matters of construction as applied to the issue in the present case.

A total of five briefs has been filed here and many cases have been cited upon the general rules of construction of statutes. It would be folly to attempt to discuss these in any detail or individually. The rules are well recognized. In general, they are: the primary endeavor is to ascertain and apply the intent of the legislature in enacting the statute, generally following the words of the statute, considered in their ordinary and common meaning, *unless an absurd or unreasonable result would follow* ; if more is

needed, a taxing statute should be strictly construed against the taxing authority, where a different intent does not appear; but the doctrine of strict construction is not to be pushed so far as to defeat the real legislative purpose by mere construction. See, generally, *United Air Lines, Inc. v. State Tax Commission,* 377 S.W.2d 444 (Mo. banc 1964); *Crooks v. Harrelson,* 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156 (1930); *State ex rel. River Corporation v. State Tax Commission,* 492 S.W.2d 821 (Mo.1973); 84 C.J.S. Taxation § 58b.

The merchants' and manufacturers' tax is an ad valorem tax, which is intended as a substitute for the personal property tax on the material so taxed. See § 137.340, applicable to First Class Counties. It is stipulated here that the "work in process" has not been returned or taxed as personal property. Under Art. X of our Constitution all tangible personal property is taxable except for specific exemptions, none of which is applicable here; and § 137.075 reaffirms that liability. The legislature had no constitutional authority to exempt this class of property. It has been held that if the legislature fails to include certain property it may not be taxed, since the constitutional provisions are not self-enforcing, and the omission is not a prohibited exemption. *City of Kansas City v. Mercantile Mutual Building & Loan Ass'n,* 145 Mo. 50, 46 S.W. 624 (1898); *State ex rel. Koeln v. Lesser,* 237 Mo. 310, 141 S.W. 888 (1911). Our problem, however, is whether this particular property has in fact been omitted from the statute or included in it, hence we turn to a construction of its terms. We may not loosely assume an intent of the legislature to omit a very substantial class of personal property which is certainly taxable in the ordinary course.

It is not particularly helpful to attempt an all-inclusive definition of "raw materials." Under some circumstances it may mean one thing, under others another. Plaintiff essentially concedes this. (Reply Brief, pages 2–3.) The "raw materials"

which plaintiff buys for its operations are certainly not the basic raw products, such as crude iron or other basic elements. While the record is not specific, plaintiff undoubtedly purchases finished steel, screws, locks, and sundry other materials which have been worked on and produced in some manufacturing processes. These are *its* "raw materials." We thus see immediately that "raw material" is a highly variable term and that a wide latitude is permitted in its actual construction. It would be a rather extreme interpretation to hold that by putting two or three of these things together they would cease to be "raw material" before the finished product is achieved. The omission by our legislature of any reference to "work in process" may well indicate that it considered all material to be raw material until it became a finished product.

It has been held that "raw materials" may include some articles which have been processed or otherwise worked up. *State v. Hennessy Co.*, 71 Mont. 301, 230 P. 64 (1924). There, in seeking to determine whether the defendant (a bakery) was a manufacturer, being one making new products out of raw material, and in considering the term "raw materials," the Court said that such is the material out of which the final product is made, and that what is raw material to one is the finished product of another; and further, that a bakery was a manufacturer, although its principal material was flour, a processed article. In *City of Henderson v. The George Delker Co.*, 193 Ky. 248, 235 S.W. 732 (1921), it was held that raw materials need not necessarily be crude materials, but may be manufactured parts purchased from others to be assembled into buggies, i. e., axles, springs, wheels, upholstery, and dozens of other items of material. The plaintiff did further work upon those materials and was held to be a manufacturer. In *City of Louisville v. Louisville Tin & Stove Co.*, 170 Ky. 557, 186 S.W. 124 (1916), a claim of exemption from local taxes was made on the ground that defendant was a manufacturer. It had

bought steel, tin and various completed parts, shaped the tin and steel and added the parts, and made stoves, pots, etc. Defendant was held to be a manufacturer and exempt from the local tax. In so holding, the Court said that to be a manufacturer one need not make products from material which is completely raw. This clearly meant that the manufactured or processed parts were raw material. In *Planters' Fertilizer & Chemical Co. v. Board of Assessors*, 116 La. 667, 40 So. 1035 (1906), it was held that a plant which changed the condition of certain elements and ingredients (whether raw or previously prepared) and converted them into a new and useful product, was a manufacturer.

■ If "work in process" is defined differently from "raw material" (as plaintiff contends), we may logically consider the "work in process" to be a sub-classification of "raw material" for all practical purposes. While the above cases are not specifically in point, we see that the "raw materials" used in a manufacturing process may be materials which, in and of themselves, have been processed or otherwise worked upon, and the question immediately arises,—if such materials are raw materials when acquired, then when, in the manufacturing process, do they cease to be raw materials? Is it when one or two screws are put into a piece of steel, when two or three of the processed parts are combined, when the product is half finished, or when the finished product is achieved? Would the mere shaping of the steel for a door or doorframe change it from its original status as raw material although it had previously been processed into steel? It is substantially impossible to state, in a logical and practical sense, a time when these materials would cease to be "raw material" (as that term is considered in its broad meaning), prior to completion of the finished product.

We have concluded that the legislature intended to tax all the material, at any stage, entering into the final product; hence, that raw material must be construed

to include "work in process." To rule otherwise, even in view of the strict construction rule, would accomplish an unreasonable and absurd result. There could be no reasonable purpose in omitting from the tax a very substantial portion of plaintiff's taxable personal property simply because some work (little or much) had been done upon it, and plaintiff suggests none. We believe that the legislature intended to tax all of plaintiff's tangible personal property used in the manufacturing process. As stated, no logical reason to the contrary has been suggested, only that the legislature "missed the boat."

It is true that Kentucky and Florida have more specific statutes. They recognize classes of "raw materials" and "products in course of manufacture" or "partially finished products." This cannot be particularly persuasive in our case. It might have been simpler if our legislature had been more specific, but we are required to construe the terms which it used, as they are, according to our own interpretation.

Plaintiff has argued that, as a practical matter, it would be extremely difficult to value and assess "work in process," and that this is an additional reason for not taxing it. The argument is meaningless here, for the item *has* been valued and assessed (for each year) and plaintiff has conceded that the valuations are correct.

If "work in process" is not taxable, and plaintiff's theory is correct, a manufacturer could easily perform a simple step, such as adding a screw or two or a little paint to the major part of his raw material (construed as plaintiff would have it) and thus convert it all into a nontaxable item. In this we are speaking generally, and not with reference to the plaintiff in this case.

Plaintiff argues that under our statutes the "work in process" is not taxable as personal property, that the manufacturers' tax is exclusive, and that this property has been omitted from taxation. (See § 137.-340, § 137.410, § 150.310.) We are not convinced that the argument is sound,—

*State ex rel. Hopkins v. Brown Tobacco Co.,* 140 Mo. 218, 41 S.W. 776 (1897),—but in any event it is of no force here. We are considering a manufacturers' tax only. Our references to the taxability of all tangible property generally are made to show the influences affecting, and the purpose of, the legislature. Plaintiff is arguing here that its work in process is exempt from any and all ad valorem taxes.

■ On February 10, 1958, the Attorney General of Missouri rendered an opinion in answer to a request from the Circuit Attorney of the City of St. Louis, to the effect that § 150.310, subjecting all "raw material and finished products" to the manufacturers' tax, *did* include "work in process." Therein he cited *State v. Hennessy Co.,* 71 Mont. 301, 230 P. 64 (1924), supra; *City of Henderson v. The George Delker Co.,* 193 Ky. 248, 235 S.W. 732 (1921), supra, and *Tidewater Oil Co. v. United States,* 171 U.S. 210, 18 S.Ct. 837, 43 L.Ed. 139. The opinion concluded that it was the intention of the legislature to include in the term "raw materials" all materials owned or held by a manufacturer "other than those in a finished state ready for delivery or sale," and that it included " * * * materials which have undergone some manufacturing processes but which will subsequently undergo further processes * * *." Of course, an opinion of the Attorney General is not binding upon the courts or the citizenry, but it may be, and often is, persuasive.

As indicated in our statement of facts, it was stipulated that a certified public accountant would have testified, if permitted, that "work in process" and "raw materials" were distinctly different entities in accounting practice, with some further elaboration; sundry objections were preserved. We do not find it necessary to rule specifically upon the objections because the proposed testimony is certainly not decisive and not even persuasive in our view of the case. The legislature in 1877 (Laws 1877, p. 293)

did not, presumably, have in mind any rules or practices of technical accounting. It used the words "raw material" and "finished products," just as they appear in § 150.310 today. Plaintiff refers to the repeal and reenactment of the Act in 1945, when, they say, the legislature would know what "work in process" is. When the Act was thus repealed and reenacted following the adoption of the new Constitution (as was much other legislation), there was no change whatever in any part material to our issue. Any changes were essentially formal. See Revision Note, V.A.M.S., § 150.310, p. 375. There is no reason to assume, and we do not do so, that the legislature, in reenacting the Act in a form in all material respects identical with the prior Act, had any different intention as to its meaning. *State ex rel. Buerk v. Calhoun,* 330 Mo. 1172, 52 S.W.2d 742 (1932). It did intend, and made, some formal changes which are wholly immaterial here. If the legislature wishes to exclude "work in process" from § 150.310, it may amend the section so as to do so specifically.

We are impelled to the conclusion that the judgments (in the two separate cases) should be affirmed. It is so ordered.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.