**Steven Q. and Cody J. ADKISON, et al., Appellants,**

v.

**FIRST PLUS BANK, et al., Respondents.**

**No. WD 62308.**

Missouri Court of Appeals, Western District.

May 18, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2004.

Application for Transfer Denied Sept. 28, 2004.

J. Michael Vaughan, Kansas City, MO, for appellant.

Leslie Ann Greathouse and Russell Jones, Kansas City, MO, for respondents.

Lori Renee Schultz, Kansas City, MO, for respondent First Plus Bank.

Mark Alan Olthoff, Kansas City, MO, for respondent U.S. Bank, et al., join on the briefs.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

PER CURIAM.

Steven and Cody Adkison, and others, appeal from a grant of summary judgment in favor of Respondents First Plus Bank, Ace Securities Corp. Home Loan Trust, 1999–A, and others. The trial court granted summary judgment, concluding as a matter of law that plaintiffs had no cause of action under Missouri's "Second Mortgage Loan Act," (sections 408.231 to 408.241, RSMo 1994). We affirm.

The appellants are Missouri home owners who obtained second mortgage loans secured by equity in their residences. Appellants (hereinafter sometimes referred to as "Borrowers") all obtained loans from First Plus Bank, a California lending institution. The loans were obtained in 1997 and 1998. The interest rates charged ranged from 11.99% to 14.75%. First Plus Bank charged borrowers a variety of fees and closing costs including "loan discount" or "loan origination" fees, brokers' fees, and other fees and costs. All of the fees and costs were financed at closing and included in the amount amortized. Certain other institutions (including Ace Securities Corp. Home Loan Trust, 1999–A ("Ace")) purchased the loans from First Plus Bank.

Appellant Borrowers thereafter brought an action against First Plus Bank and the assignees of First Plus Bank, including Ace. Appellants brought their action under Missouri's Second Mortgage Loan Act ("SMLA") (sections 408.231 to 408.241, RSMo 1994) contending that the provisions of Missouri law were violated by the terms of the loans and seeking actual and punitive damages. It is clear that at least one purpose of the SMLA was to place limits on the amount of interest, and also on the additional fees and charges, that second mortgage lenders were charging loan consumers in Missouri. In 1998, the interest rate limitation was removed from the Act, but the limitations on permissible additional fees remained in place. In this case, each loan was negotiated and executed in Missouri by a Missouri resident. The Borrowers contended in their action that the loans in question were unlawful in that the various fees and costs were violative of the

limitations placed on such terms by the SMLA.

Respondent Ace moved for summary judgment on the ground that the SMLA does not apply to the loans of appellants and that Ace, and others, were therefore entitled to judgment as a matter of law. Ace argued that section 408.232.4 provides an exemption from the SMLA for loans on which "the rate of interest charged is lawful without regard to" the rates permitted in subsection 1 [the subsection which set a maximum interest for second mortgage loans]. They argued that the interest rates on all the loans in question were lawful under California law without regard to section 408.232.4 and, therefore, the loans were exempt from the SMLA.

All parties stipulated and agreed to be governed by the trial court's ruling on Ace's motion. On December 3, 2002, the trial court granted the motion for summary judgment in behalf of all defendants, concluding that the SMLA was not applicable to the loans in question. The Borrowers appeal.

While this appeal has been pending, this court has reviewed identical legal issues in the case of *Avila v. Community Bank of Virginia*, WD 61568, 143 S.W.3d 1, 2003 WL 22002779 (Mo.App.2003), appealed from the Circuit Court of Jackson County. In an opinion dated August 26, 2003, this court held that the trial court did not err in granting summary judgment to the defendants in that case on the basis that the SMLA did not apply.

In this case, which was ruled by the trial court before the decision of this court on appeal in *Avila*, the trial court also concluded the SMLA was not applicable to the loans in question. The trial court noted that First Plus, as a federally insured state-chartered institution, is subject to the provisions of 12 U.S.C. § 1831d, known as the Depository Institutions Deregula-

tion and Monetary Control Act of 1980 ("DIDA"), which states in pertinent part as follows:

In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate ... allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

The trial court in this case noted that the interest rates charged were in each case lawful under California state law. The court also noted that 12 U.S.C. § 1831d was enacted in order "to level the playing field between federally-chartered and state-chartered banks," *citing Greenwood Trust Co. v. Commonwealth of Massachusetts*, 971 F.2d 818, 826 (1st Cir. 1992). Under the federal statute, state-chartered banks, like national banks before them, were allowed to export interest rates authorized under the laws of their home states. Thus, the trial court observed, federal banking law permitted First Plus Bank, as a federally insured state-chartered institutional lender, to export its home state's interest rates to other states, even though those rates may be usurious or unlawful under the laws of such other states.

The Borrowers contended below and contend on appeal that 12 U.S.C. § 1831d is irrelevant to this matter because the SMLA never intended to exempt out-of-state lenders from the regulation of "additional charges and fees" provided in the SMLA.[1] Borrowers contend that the General Assembly did not have in mind any accommodation to 12 U.S.C. § 1831d in enacting subsection 4 of 408.232. The SMLA, they say, places restrictions upon the extra fees and charges that may be assessed against borrowers by the lenders and contains no exemption for foreign state-chartered banks making loans in Missouri at interest rates that would be permitted under the laws of the foreign state.

The controversy is about the precise meaning of section 408.232.4. The issue is one of statutory interpretation.

Section 408.232 was enacted in 1979. As originally enacted it stated as follows:

1. With respect to a second mortgage loan, any person, firm or corporation may charge, contract for, and receive interest in any manner at a rate which shall not exceed one and three-eighths percent per month, computed on unpaid balances of the principal for the time actually outstanding.

2. The term of the loan, for purposes of this section, commences with the date the loan is made. Differences in the lengths of months are disregarded, and a day may be counted as one-thirtieth of a month and one-three hundred sixtieth of a year. When a second mortgage loan contract provides for monthly installments, the first installment may be payable at any time within one month and fifteen days of the date of the loan.

3. For revolving loans, charges may be computed at a daily rate of one-thirtieth of the monthly rate on actual daily balances or at a monthly rate on the average daily balance in each monthly billing cycle.

A year later, in 1980, it was amended in part. Subsection 1 was amended in that the phrase "one and three-eighths percent per month" was changed to "one and sixty-seven hundredths percent per month." Also, subsection 4, the focus of our inquiry in this case, was added:

4. Section 408.231 to 408.237 [which address, *inter alia*, the additional fees and charges] shall not apply to any loans on which the rate of interest charged is lawful without regard to the rates permitted in subsection 1 of this section.

In 1998, the statute was again amended. This time the phrase limiting the rate of interest to "one and sixty-seven hundredths percent per month" in subsection 1 was changed to allow interest "at rates agreed to by the parties." Subsections 2, 3, and 4 were unaffected by the 1998 amendment.

The loans in question here were made in 1997 and 1998. All except one, the Adkison loan, were made prior to the effective date of the change to subsection 1. Plaintiffs do not argue that the removal of a maximum specified rate of interest in subsection 1 has an effect on the interpretation of subsection 4 or on the application of the non-interest protections of the statutes.

---

1. The Borrowers contend there is not an issue of preemption in this case because the rates of interest charged do not exceed the rates permitted by the SMLA unless one were to redefine "interest" to include the financing of the additional fees. The trial court did not address the issue of preemption; we also find it unnecessary to do so.

Here, in the trial court, Ace argued that because the interest rates charged by First Plus Bank were lawful under California law, and hence could be exported to Missouri under federal law, the SMLA had no application to the First Plus loans at all because section 408.232.4 provided that the SMLA would not apply to any loans on which the rate of interest charged is "lawful without regard to the rates permitted in subsection 1" of 408.232. The trial court noted that the language in question must be interpreted in its context. The court, in its oral comments, noted that the statute was passed in the same year as the federal government adopted 12 U.S.C. § 1831d to further promote interstate lending competition between state-chartered and federally-chartered insured banks. The court believed that in view of the circumstances extant at that time, the General Assembly chose to accommodate the legal effect codified in 12 U.S.C. § 1831d in subsection 4 of 408.232. The court concluded that the word "lawful" in context was intended to include (although it would not necessarily be limited to) the concept of lawful in accordance with 12 U.S.C. § 1831d as to a federally insured state-chartered bank. The trial court did not attempt to decide whether the federal law preempted Missouri law. The court instead merely interpreted the meaning of "lawful" and concluded that the term included the concept of applying 12 U.S.C. § 1831d to a federally insured bank in this context.

The Borrowers in this case appeal the trial court's determination, contending that the court erred as a matter of statutory construction. The Borrowers contend that the word "lawful" in 408.232.4 means only "lawful under Missouri law." Appellant Borrowers contend, in other words, that the statute simply was referring to other provisions of *Missouri* law which create exemptions for certain types of loans, such as agricultural or commercial loans.

In *Avila*, this court held that the plain and ordinary meaning of the term "lawful" in this context would mean lawful not only under Missouri's interest rate laws but also under any other laws that may be applicable to second mortgage loans. This court stated that it would presume that the legislature acted with knowledge of existing state and federal interest laws in utilizing the word "lawful" in the subsection. This court noted that the General Assembly could have expressly referred to interest rates lawful under Missouri law (or under Chapter 408) if the legislature had so intended.

### Statutory Construction

█ We start with the notion that we will construe a statute in accordance with the plain and ordinary meaning of the words and phrases employed in the statute. We will look for some other meaning only when it would be absurd to interpret the statute in accordance with the ordinary meaning of the words. *Mesker Bros. Indus., Inc. v. Leachman*, 529 S.W.2d 153, 156 (Mo.1975).

> . . . [T]he primary endeavor [in statutory construction] is to ascertain and apply the intent of the legislature in enacting the statute, generally following the words of the statute, considered in their ordinary and common meaning, unless an absurd or unreasonable result would follow. . . .

*Id.*

The question is whether it is absurd or unreasonable to suggest, as does Ace, that the Missouri legislature, in regulating second mortgage lending practices, sought at the same time to avoid regulating the "additional fees and charges" of loans in which the interest rate was lawful independently of any permission granted by the SMLA.

In other words, if the interest rate on the second mortgage loan could have been lawful on some other basis than that it was within the rate parameters established in the SMLA, then the additional consumer protection regulations of the SMLA would not apply to any part of the loan charges. This would be true of loans made by out-of-state federally-insured lenders already regulated by their own state and the federal government. If some other sovereign is going to regulate the interest rate that can be charged on that loan, the General Assembly might have thought, then it makes sense to leave all aspects of the loan to that sovereign. Stated another way, the question is whether the General Assembly may plausibly have intended a legislative result that exempts from the consumer protections of the SMLA the loans of those federally-insured foreign state banks whose interest rates are legal under the laws of their own states. If it is not absurd or unreasonable to suggest that the General Assembly intended to allow such foreign state banks to avoid some of the significant consumer protection provisions of the SMLA while requiring Missouri's own lenders to comply with such protections, we will not look for any other meaning in the statute.

Appellants argue persuasively that one would expect that the General Assembly would have liked for the regulation of the additional fees and charges to apply across the board to both in-state and out-of-state lenders. That may be. However, judges are not permitted the liberty of breathing a preferred meaning into statutes merely because there is a good argument that the statute was intended to mean something other than what the plain and ordinary meaning of the words would suggest. The fact that another interpretation would seem to make better policy or produce a more reasonable outcome in our eyes becomes a consideration only after it has appeared that there is some ambiguity or some self-contradiction or absurdity expressed. Effect must be given to the legislative intent based on what the legislature said, not on what the legislature might have intended to say or inadvertently failed to say. *State ex rel. Competitive Telecomm. v. Mo. Pub. Serv. Comm'n,* 886 S.W.2d 34, 39 (Mo.App.1994); *see also Abrams v. Ohio Pac. Express,* 819 S.W.2d 338, 340 (Mo. banc 1991).

Taken at face value, the statute says that the non-interest SMLA protections will not apply to a loan in which the interest rate is lawful under some provision of law other than that expressed in subsection 1 of the statute. This would mean lawful in general, under Missouri law or any other law. The word "lawful," as we noted in *Avila,* is quite broad. It would not have been unusual for the General Assembly, if it were thinking only of Missouri interest rate regulation, to have said "lawful under this Chapter," referring to Chapter 408, which governs loans and interest charges. Instead, the General Assembly chose a broader term, "lawful," without a limiting modifier. In accordance with our ruling in *Avila,* we do not believe we can say that it would be absurd or unreasonable for the legislature to decide, with regard to the interstate lending practices (including regulation of the non-interest charging practices of foreign state banks), to leave the regulation thereof to the federal government and the foreign states themselves.

We are not persuaded that it would necessarily be nonsensical or irrational for the General Assembly to exempt federally-insured foreign lenders from the restrictions imposed by the SMLA. For one thing, doing so avoids any issue of whether federal law preempts state regulation. There can be no preemption where a state has voluntarily accommodated itself

to the very concepts enforced by federal law. Secondly, the General Assembly may not have viewed the exemption of foreign lenders from the SMLA as being strongly inimical to the interests of Missouri borrowers. Borrowers, of course, are still permitted to "shop the field" for mortgage loans. There may have been an assumption by the General Assembly that if non-Missouri lenders are charging fees that do not compare favorably with the fees charged by Missouri lenders, that fact will place some pressure on such non-Missouri lenders to bring their fee charges into line. Although such lenders need not comply with the provisions of the SMLA regulating additional fees and charges, such lenders will still have to deal with market mechanisms that would tend to impose some price discipline on the fee practices as well. Thus, it seems that it is not necessarily absurd or unreasonable to conclude that the General Assembly could have viewed section 408.232 as a reasonable accommodation to interests of interstate regulation by the federal government while still providing significant consumer protection to its Missouri constituency. When the language of the statute has a plain and unambiguous meaning, and that meaning is not absurd or unreasonable, we need not consult the opinions of scholars or of state officers charged with enforcement of the statute.[2] Accordingly, for the reasons expressed in *Avila,* we cannot say that the trial court misapplied the law in its construction of the statute in question. Point I is denied.

### Other Arguments

■ Appellants raise on appeal an argument based on Article 3, section 44 of the Missouri Constitution. They contend that to the extent the SMLA would purport to allow different loan rates, or different services or other charges in connection with loans, it would violate that section which prohibits rate differentiation as to "any particular group or class engaged in lending money." This argument was not raised in the trial court, and is not set forth in a point on appeal. Accordingly, we treat it as waived.

■ Appellants also contend (in their Point II) that there remains a dispute as to whether First Plus Bank was or was not the true lender because entities other than First Plus actually, they say, funded the loans. We decline the invitation to reverse and remand for further factual inquiry on that basis. All the documents in this case show that First Plus Bank was the lender and obligated to make the loan. Borrowers here, at best, hope that further discovery would produce some evidence that another entity, an entity not a state-chartered, federally insured bank, actually provided the funding. Borrowers do not show, however, that even if they could show that First Plus Bank had a pre-arranged plan to initiate the loans on behalf of another lender, that would be material. The documents show that First Plus is the entity that *agreed* to lend the money, and was obligated to do so. Borrowers provide no authority for the notion that because First Plus might have had a pre-arranged plan to obtain the money somewhere other than out of its own resources, it could not be the lender for legal purposes generally or for SMLA purposes in particular. Point II is denied.

■ Finally, appellants contend in their Point III that even if First Plus *did* make the loans in question, the interest rates

---

2. The appellants point out that the counsel to the Missouri Division of Finance has stated his personal view in a letter that the phrase "lawful without regard to . . ." was intended to mean "lawful *under other provisions of Missouri law* without regard to. . . ."

charged could not be "lawful" because First Plus Bank, as an industrial loan company under California law, was not legally empowered to make the loans in the first place. This argument also was not raised in the trial court. Thus, the parties waived litigation of issues not raised below. Point III is denied.

The judgment is affirmed.